Raymond **POTTLE** and Heidi Pottle

v.

**UP–RIGHT, INC.**

Supreme Judicial Court of Maine.

Argued June 4, 1993.
Decided July 20, 1993.

Philip P. Mancini (orally), John C. Walker & Associates, P.A., Portland, for plaintiffs.

Thomas J. Quinn (orally), Douglas, Whiting, Quinn & Denham, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

Raymond Pottle and his wife, Heidi Pottle, appeal from a judgment entered in the Superior Court (Cumberland County, *Fritzsche, J.*), granting the motion of Up–Right, Inc. for a summary judgment on the Pottles' complaint seeking damages for Up–Right's alleged negligence and strict liability in the design and manufacture of a scaffold and a failure to provide adequate warnings for its use. Because the record discloses that the Pottles generated genuine issues of material facts about the identification of the scaffold and Up–Right's failure to provide adequate warnings, we vacate the summary judgment.

On January 16, 1984, Raymond Pottle was employed by Eastern Electric to assist Anthony Ferrante with electrical work at the Fairchild Semiconductor plant in South Portland. Ferrante and Pottle borrowed a scaffold at the plant from employees of Dirigo Drywall Associates in order to remove electrical fixtures from the ceiling. After Pottle had been working with the scaffold for approximately two hours, one of the scaffold's extended legs telescoped upward, tilting one side of the platform down, causing Pottle to fall to the floor and injure his elbow and wrist. The Pottles subsequently filed a complaint against Up–Right as the manufacturer of the scaffold from which Pottle fell. After a hearing, the trial court granted Up–Right's motion for a summary judgment, and the Pottles appeal.

The Pottles contend that there exists genuine issues of material facts concerning the identity of the scaffold and Up–Right's failure to warn, and therefore, the trial court erred by granting Up–Right's motion for a summary judgment. We agree. On an appeal from a summary judgment, we review the record in the light most favorable to the losing party to determine whether it supports the trial court's decision that there were no genuine issues of material facts and that the successful party was entitled to a judgment as a matter of law. *Chalet Susse Intern. v. Mobil Oil Corp.*, 597 A.2d 1350, 1352 (Me.1991). "On

issues where the nonmovants bear the burden of proof, [the nonmovant] must reliably demonstrate that specific facts sufficient to create an authentic dispute exist." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

Fundamental to the Pottles' complaint is their identification of the scaffold in their possession as the scaffold from which Pottle fell. *See* M.R.Evid. 901(a); Graham, *Federal Practice and Procedure: Evidence* § 6821 (1992) (hereinafter cited as Graham, *Evidence*). "Where the object is unique and thus identifiable ... on the basis of its distinctive appearance, evidence [of its identity] can be ... offered by one individual." Graham, *Evidence* § 6822 at 854.

> Sometimes, it is a close question whether a given object offered in evidence may be authenticated merely by a person's testimony that it is the same object that is connected to the issues in the case. While no one would quarrel with an owner's testifying 'that's my dog', ... a police officer testifying that a given mass-produced gun is the same gun that was seized from the defendant raises a close question. Unless there are either identifying marks on the object or a chain of custody can be established, such foundation testimony could be insufficient.

Field & Murray, *Maine Evidence* § 901.2 at 9–6 (3d ed. 1992). "If the offered item possesses characteristics which are fairly unique and readily identifiable [there exists] broad discretion to admit merely on the basis of testimony that the item is the one in question...." 2 *McCormick on Evidence* § 212 at 8 (4th ed. 1992).

■ Pottle offered the following evidence to identify the scaffold presently in his possession as being the scaffold causing his injuries: (1) Robert Weiss, who was the foreman for the Dirigo Drywall crew in the Fairchild plant at the time of the accident, had helped to remove the scaffold to Dirigo's office after Pottle's fall and had noticed broken forks from the scaffold's leg-locking mechanism on the ground. Weiss was able to identify the scaffold at issue visually, with particular reference to the forks missing from the mechanism. (2) Richard Soucy, also a Dirigo employee, witnessed Pottle's fall from the scaffold and helped Weiss find three broken forks from the locking mechanism and remove the scaffold from the plant. Soucy could also identify the scaffold by sight from a picture that indicated three forks missing from the locking mechanism. (3) Pottle identified the scaffold on the basis of its tubular construction and the spray-painted red and green markings on the joints of its legs. Based on this evidence, if believed, a factfinder rationally could find by a preponderance of the evidence that the scaffold in Pottle's possession is the scaffold from which he fell.

■ Up–Right argues that the identifications by Weiss and Soucy should not be considered because they were offered in the form of depositions taken for a separate civil action and did not fall within the former testimony exception to the hearsay rule. *See* M.R.Evid. 804(b)(1). The "underlying purpose of the summary judgment process [is] to expose an untenable claim or defense." *Magno v. Town of Freeport*, 486 A.2d 137, 141 (Me.1985). The rules governing summary judgment do "not expressly limit depositions that may be considered to those on file with the court." *Lortie v. Bois*, 119 N.H. 72, 398 A.2d 540, 542 (1979). "Deposition testimony constitutes competent summary judgment evidence. This would be true even if the depositions were taken in another case before other parties as they are sworn testimony and as reliable, if not more reliable than an ex parte affidavit offered into summary judgment evidence." *Dyer v. Shafer, Gilliland, Davis, et al.*, 779 S.W.2d 474, 477 (Tex.App.1989) (citation omitted). In reaching a determination on a motion for a summary judgment, the trial court could properly consider the Soucy and Weiss identifications, proffered in the form of deposition testimony taken in a separate action where the scaffold identification was also in issue.

■ Strict products liability attaches to a manufacturer when by a defect in design or manufacture, or by the failure to

provide adequate warnings about its hazards, a product is sold in a condition unreasonably dangerous to the user. *Walker v. General Elec. Co.*, 968 F.2d 116, 119 (1st Cir.1992) (reciting Maine products liability law). Products liability sounds in negligence when by its design or failure to warn, the defendant breaches a duty owed to the plaintiff, and such breach was the actual and legal cause of the plaintiff's injuries. *Id.* at 120. Regardless of whether a "failure to warn claim is phrased in terms of negligence [or] strict liability, the analysis ... is basically the same. [T]he 'general rule [is] that the supplier of a product is liable to expected users for harm that results from foreseeable uses of the product if the supplier has reason to know that the product is dangerous and fails to exercise reasonable care to so inform the user.' " *McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 641 (1988) (quoting *Payne v. Soft Sheen Products, Inc.*, 486 A.2d 712, 721 (D.C.1985)). A products liability action for failure to warn requires a three-part analysis: (1) whether the defendant held a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury. *McNeal*, 836 F.2d at 641–44. Viewing the record in this case in the light most favorable to Pottle, genuine issues of material facts were generated on all three counts.

■ First, a duty to warn arises when the manufacturer knew or should have known of a danger sufficiently serious to require a warning. *Id.* Pottle proffered evidence that the scaffold in question employed a blocking ring system to lock its legs, thereby engaging the lock when a safety collar was pushed below a certain point on the mechanism. Pottle also presented evidence that the point at which the collar should be pushed was not clearly marked, nor was there an audible "click" when the lock became engaged. The failure to properly engage the leg locks creates the potential for the legs of the scaffold to telescope upward under the weight of its user. We cannot say on this record that, as a matter of law, Up–Right had no duty to provide a warning about the seri-ous danger attending the non-engagement of the scaffold leg locks.

■ Second, when a duty to warn exists, the warning must advise the user of the risks associated with its product and offer the user specific directions for the product's safe use. *Id.* at 643. The Up–Right scaffold contained a steel stamp on the locking assembly stating "push collar below safety lock." Pottle, however, introduced evidence that this message was not apparent because it was too low on the scaffold leg; that scaffold warnings were usually printed on yellow stickers attached to the product; that because the color of the steel stamp blended in with the scaffold leg, its message could be obscured by the debris that is often involved in working conditions; and that the location of the "safety lock" on the mechanism referred to in the message was not readily identifiable. This evidence sufficiently generates the issue of the adequacy of the warning on the scaffold.

■ Third, the manufacturer's failure to provide an adequate warning must be a substantial factor in bringing about the plaintiff's injury. *Id.* at 644. Here, Pottle produced evidence that at the time he used the scaffold it was covered with debris from the job site environment that could obscure the steel stamp; that Ferrante did not see the steel stamp; that Ferrante felt the locking mechanism before Pottle used the scaffold and concluded that it was engaged; and that the scaffold leg ultimately telescoped upward while Pottle was on the scaffold because the locking mechanism was not properly engaged. This evidence, if believed, could rationally support a conclusion that the failure to provide adequate warnings about the scaffold leg locks was a proximate cause of Pottle's injury.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings in accordance with the opinion herein.

All concurring.