<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 99-1094

                        LISA A. VARANO,

                     Plaintiff, Appellant,

                               v.

        MICHAEL G. JABAR, D/B/A MIKE'S ROOFING COMPANY;
                      STERN COMPANY, INC.,

                     Defendants, Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MAINE

            [Hon. Gene Carter, U.S. District Judge]

                      ____________________

                             Before

                     Stahl, Circuit Judge,

             John R. Gibson, Senior Circuit Judge,

                   and Lynch, Circuit Judge.

                     _____________________

   William C. Knowles, with whom Gene R. Libby, Rita H. Logan and
Verrill & Dana, LLP were on brief, for appellant.
   James Q. Shirley, with whom Sheehan Phinney Bass + Green,
P.A., Anna Barbara Hantz and Gottesman and Hollis, P.A. were on
brief, for appellee Michael G. Jabar d/b/a Mike's Roofing Company.

                      ____________________

                      November 24, 1999
                      ____________________

        JOHN R. GIBSON, Senior Circuit Judge.  Lisa Varano
appeals from the judgment as a matter of law entered against her on
her products liability claim against Michael Jabar, and also from
the judgment entered against her on a jury verdict on her
negligence claim.  Varano claimed she became ill from fumes
released when Jabar, doing business as Mike's Roofing, used an
adhesive containing isocyanates to repair the roof above the store
where Varano was working.  After Varano presented her case, the
district court entered judgment as a matter of law against her on
her strict liability failure-to-warn claim because the court
concluded that Jabar was not a "seller" of the adhesive, which is
a statutory element of Varano's claim under Maine law.  The court
permitted Jabar to introduce evidence that he had used the adhesive
in the past without any problems.  The court submitted Varano's
negligence claim to the jury, but refused Varano's requested res
ipsa loquitur instruction on the ground that Varano had not adduced
evidence that would warrant the instruction. The jury returned a
verdict for Jabar.  On appeal, Varano argues that the district
court erred in entering judgment against her on her strict
liability claim, in permitting Jabar to introduce evidence of his
past use of the adhesive without injuries, and in denying her
requested res ipsa loquitur instruction.  We affirm.
        Varano testified that on February 17, 1995, she was
working in her office in the back of the Nautica store in a mall in
Kittery, Maine.  She heard some banging on the roof of the store,
followed by the presence of a strong odor of glue or adhesive.  She
went outside the store and saw that employees of Jabar's company,
Mike's Roofing, were working on the roof.  Back inside the store,
Varano found that the odor had grown stronger, so she called the
property management company to report the problem.  As the day went
on, the odor became stronger until Varano could see a "vapor" and
a "haze" in the room.
        By the next day, Varano had a sore throat and chest
discomfort.  She was admitted to the emergency room on March 2 and
March 8, 1995 because she was experiencing chest pains and could
not breathe.
        On March 9, 1995, Jabar's employees were back at work on
the roof of the mall.  When Varano arrived at work, one of her
coworkers told her that the odor had returned.  Varano again called
the management company to complain.  In response, two of Jabar's
employees and Jabar's wife, Wendy Collins, came to the Nautica
store.  Varano asked them what they were using on the roof.  One of
Jabar's employees left and returned with a can of Firestone Splice
Adhesive.  He opened the can, and Varano identified the odor as the
one she had smelled in the store on February 17.
        After the incidents at the store in February and March
1995, Varano was diagnosed with occupational asthma, induced by
exposure to isocyanates.  Splice Adhesive contains isocyanates.
        Varano sued Jabar, alleging a products liability claim
for failure to warn of the danger posed by exposure to Splice
Adhesive and negligence in failing to warn her.  Varano's theory
was that there was a "release" of Splice on the roof that worked
its way down through the decking of the roof into the back of the
Nautica store where Varano was working.  Jabar's expert testified
that Varano could not have been exposed to levels of isocyanates
sufficient to cause asthma in connection with the use of Splice
Adhesive on the roof.  Jabar's medical expert testified that
Varano's medical condition was not caused by isocyanate exposure,
but rather by recurrent infections.  The district court granted
judgment as a matter of law against Varano on the ground that Jabar
was not a "seller" of Splice Adhesive within the meaning of Maine's
products liability statute, Me. Rev. Stat. Ann. tit. 14,  221
(West 1997).  The court submitted Varano's negligence claim to the
jury, which found for Jabar.
                               I.
        Varano argues that the district court erred in entering
judgment as a matter of law against her on her strict liability
claim on the ground that Jabar was not a seller of Splice Adhesive
within the meaning of Me. Rev. Stat. Ann. tit. 14,  221.  We
conclude that, whether or not Jabar was a seller under Maine law,
the court submitted to the jury the same elements in the negligence
instruction as Varano would have been entitled to under a strict
liability failure-to-warn instruction.  Therefore, any possible
error in denying Varano the chance to submit her strict liability
failure-to-warn claim to the jury was harmless.
        Varano's complaint pleaded a strict liability claim based
only on failure to warn of danger associated with the use of Splice
Adhesive.  Varano's tendered strict liability instruction included
a statement that the "roofing products may be defective and
unreasonably dangerous because of a failure to provide adequate
warnings regarding potential dangers involved in the use of the
products."  Varano's tendered instruction did not contain any
indication that the jury had to find that Jabar knew or should have
known of the danger to find Jabar liable for failure to warn of
that danger.  Jabar contends that, even assuming the district court
erred in failing to submit the strict liability failure-to-warn
claim to the jury, the error is harmless as a matter of law because
the court instructed the jury on negligent failure to warn.  Jabar
argues that the two claims are so similar under Maine law that the
jury's rejection of the negligence claim establishes that it would
have also rejected the strict liability claim.
        In Cheshire Medical Center v. W.R. Grace & Co., 49 F.3d
26, 32-33 (1st Cir. 1995), we held that failure to submit a strict
liability failure-to-warn instruction would be harmless if the
court instructed on a negligent failure-to-warn claim and if the
strict liability duty to warn was no more stringent than the duty
of prudent care under New Hampshire law.
        The Maine Supreme Judicial Court has stated that the duty
imposed by Maine's products liability statute, Me. Rev. Stat. Ann.
tit. 14,  221, in a duty to warn context, is the "responsibility
to inform users and consumers of dangers about which [the seller]
either knows or should know at the time the product is sold."  
Bernier v. Raymark Indus., Inc., 516 A.2d 534, 540 (Me. 1986),
quoted in Lorfano v. Dura Stone Steps, Inc., 569 A.2d 195, 197 (Me.
1990).  "[T]his aspect of strict liability bears a strong
resemblance to a negligence action."  Lorfano, 569 A.2d at 196.  
The Maine court quoted the comments of Professor Prosser, who
stated that the two claims are the same, except that the claim
sounding in strict liability is subject to strict liability
defenses and other limitations on liability, rather than the
defenses and limitations relevant to negligence claims.  Id.
(quoting W. Prosser & W. Keeton, The Law of Torts  99, at 697 (5th
ed. 1984)).
        Thus, while the Maine Court indicated that there are
differences in the defenses and limitations on liability applicable
to the two causes of action, both causes spring from an identical
duty of care:
                 Regardless of whether a failure to warn claim
        is phrased in terms of negligence [or] strict
        liability, the analysis . . . is basically the
        same.  [T]he general rule [is] that the
        supplier of a product is liable to expected
        users for harm that results from foreseeable
        uses of the product if the supplier has reason
        to know that the product is dangerous and
        fails to exercise reasonable care to so inform
        the user.  

Pottle v. Up-Right, Inc., 628 A.2d 672, 675 (Me. 1993) (internal
quotations omitted and emphasis added).
        Varano's proposed strict liability instruction did not
include the concept that Jabar would only be liable for failure to
warn of dangers of which he knew or should have known.  On appeal,
Varano continues to argue that strict liability does not require a
breach of a duty of care.  However, under Maine law it is clear
that strict liability failure-to-warn cases do require breach of
such a duty.  See Pottle, 628 A.2d at 675; Lorfano, 596 A.2d at
196. We need not decide whether, on different facts, there might be
some differences between the strict liability failure-to-warn and
negligent failure-to-warn claims under Maine law; the only
difference urged upon us in this case concerns whether the strict
liability failure-to-warn theory must include the concept that the
supplier knew or should have known of the danger posed by the
defect.  We hold that it does, and that Varano's strict liability
claim was therefore subsumed within her negligence claim.  See
Pottle, 628 A.2d at 675; cf. Cheshire Med. Ctr., 49 F.3d at 35
(where plaintiff did not tender a correct instruction or object on
the correct ground, we did not reach the argument that there is
some difference between negligent and strict liability failure to
warn theories).  Consequently, we need not reach the question of
whether Jabar was a seller under the Maine products liability
statute.

                              II.
        Varano next argues that the district court erred in
allowing Jabar to introduce evidence that he and his employees had
used Splice Adhesive in the past and had never experienced problems
or had complaints.  Varano argues that this testimony was
irrelevant, because Jabar contended at trial that his employees did
not use Splice Adhesive on February 17, 1995, but only cleared ice
and snow off the roof.  In a similar vein, Varano argues that the
nonoccurrence evidence was unduly prejudicial under Federal Rule of
Evidence 403.  Ordinarily, we review for abuse of discretion the
district court's relevance determination and its weighing of
probative value versus unfair prejudice.  See Espeaignnette v.  
Gene Tierney Co., 43 F.3d 1, 5, 10 (1st Cir. 1994).  Here, because
Varano only objected to the evidence by a motion in limine and made
no contemporaneous objection, we review for plain error.  See
Clausen v. Sea-3, Inc., 21 F.3d 1181, 1190 (1st Cir. 1994).  Varano
argues that the district court's denial of her motion in limine was
sufficiently final to obviate the need for her to object at trial,
but we see nothing in the district court's summary denial of her
motion that would excuse her from the usual obligation to object at
trial.
        Varano says that since Jabar denies using the Splice on
the date in question, evidence of what happened on other occasions
when he did use it is irrelevant.  To the contrary, such evidence
is directly relevant to Varano's claim that Jabar's  use of  Splice
on February 17 caused her injuries.  See Espeaignnette, 43 F.3d at
9-10 (evidence that manufacturer had received no reports of other
accidents relevant to causation).  This evidence tends to show that
even if Jabar had used Splice on the roof, it would not have caused
Varano's injuries.  This reasoning is not inconsistent with Jabar's
contention that his employees did not use Splice on February 17;
rather, it is auxiliary to Jabar's principal theory.  The district
court certainly did not commit plain error in admitting evidence of
prior use.  Varano argues that it was unfairly prejudicial to let
Jabar prove he had used Splice in the past without incident unless
he conceded that he used it on February 17.  This is merely a
variant on the argument we have already rejected.
                              III.
        Varano contends that the district court erred in denying
her requested res ipsa loquitur instruction.
        A district court is bound to instruct the jury on all
issues of fact raised by the evidence adduced at trial.  See Wilson
v. Maritime Overseas Corp., 150 F.3d 1, 10 (1st Cir. 1998).
                 The standard for determining whether a factual
        issue is sufficiently contested to require an
        instruction is identical to the standard for
        determining whether a factual controversy
        prevents the entry of judgment as a matter of
        law.
                            . . . .

                   In neither situation may the court weigh the
        evidence, make credibility determinations, or
        resolve conflicts in the proof.  Instead, the
        court must determine whether the evidence
        presented at trial, along with all inferences
        that may reasonably be drawn therefrom, could
        plausibly support a finding for either party
        on any given issue of material fact.

Id.  Our review of the district court's decision not to instruct on
an issue is plenary.  Id.  If the court erroneously fails to
instruct on a material issue of fact, we still may not grant a new
trial on the basis of that error if the error is harmless.  Id. at
6.
        The right to a res ipsa loquitur instruction is
determined by Maine law in this diversity case.  See, e.g., DiPalma
v. Westinghouse Elec. Corp., 938 F.2d 1463, 1464-65 (1st Cir. 1991)
(applying Rhode Island law); Roln-Alvarado v. Municipality of San
Juan, 1 F.3d 74, 79 (1st Cir. 1993) (applying Puerto Rico law).
Under Maine law, the res ipsa loquitur doctrine permits a finding
of negligence in connection with an unexplained event if the
plaintiff can show  (1) the event was of a kind which ordinarily
does not occur in the absence of negligence; (2) other responsible
causes are sufficiently eliminated by the evidence; and (3) the
indicated negligence is within the scope of the defendant's duty to
the plaintiff.  See Poulin v. Aquaboggan Waterslide, 567 A.2d 925,
926 (Me. 1989); Ginn v. Penobscot Co., 334 A.2d 874, 878, 880 (Me.
1975).  According to the Restatement (Second) of Torts, "It is the
function of the court to determine whether the inference may
reasonably be drawn by the jury, or whether it must necessarily be
drawn."  Section 328D(2) (1965).
        The district court denied the res ipsa loquitur
instruction, stating:
                 I think the evidence does not show that this
        accident could happen only as a result of the
        conduct on the part of the defendant, and that
        there is no showing, no basis on which a jury
        could conclude there is no other explanation
        [than] the conduct of the defendant in
        bringing about the injury complained of in
        this case.

        The evidence in this case included possible alternative
explanations for the odor in the Nautica store and for Varano's
medical condition.  Where the record establishes possible
explanations for the accident other than the defendant's
negligence, res ipsa loquitur does not apply.  See Wellington
Assocs., Inc. v. Capital Fire Protection  Co., 594 A.2d 1089, 1092
(Me. 1991); see also Sheltra v. Rochefort, 667 A.2d 868, 870 (Me.
1995).  The district court did not err in concluding that the
evidence did not warrant submitting a res ipsa loquitur instruction
to the jury.
        We affirm the judgment of the district court.

</body>

</html>