STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-07-282

/\ | /:        -/'/ ./- ,   ¨

CRAIG BURNS,

Plaintiff,

v.

WAYNE-DALTON CORP, and
ARCHITECTURAL WINDOWS
AND DOORS

Defendants.

**ORDER ON MOTION IN
LIMINE TO TESTIMONY
OF PLAINTIFF'S
EXPERT**

FILED & ENTERED
SUPERIOR COURT

SEP 1 7 2009

PENOBSCOT COUNTY

The matter before the Court is defendant Wayne-Dalton Corp.'s motion *in limine*

to exclude the testimony of plaintiff's expert Robert Flynn. The Court has reviewed the

parties' filings on the matter and denies the motion.

## BACKGROUND

Wayne-Dalton has moved to exclude testimony of plaintiff's designated liability

expert, Robert Flynn, at trial. The defendant maintains that Flynn's testimony as an

expert witness is inadmissible on three distinct grounds: (1) Flynn lacks the appropriate

qualifications to provide expert testimony on the facts of this case; (2) Flynn's anticipated

opinions lack sufficient reliability; and (3) Flynn's anticipated opinions lack sufficient

relevance. On August 4, 2009, Defendant Architectural Doors and Windows moved to

1

join and adopt the arguments presented in Wayne-Dalton's motion *in limine*. The Court addresses defendants' arguments in turn.

## DISCUSSION

*A. Qualifications of Flynn*

The Court finds that plaintiff's expert, Robert Flynn, meets the minimum standard applicable to qualify as an expert in this case. The Maine Rules of Evidence provide:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine the fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

M.R. Evid. 702. Generally, for expert testimony to be admissible, "the expert must be able to provide some insight beyond the kind of judgment an ordinarily intelligent juror can exert." *Tolliver v. Dept. of Transp.*, 2008 ME 83, ¶ 28, 948 A.2d 1223, 1233 (citation omitted) (internal quotation marks omitted). "The qualification of an expert and the scope of the his opinion testimony are matters within the discretion of the trial court." *Id.* (citation omitted) (internal quotation marks omitted).

Wayne-Dalton claims Flynn has no academic or experiential credentials that qualify him to provide testimony on the nature of warnings or safety standards that apply in the overhead garage door industry. To the contrary, Flynn has over thirty years of experience as a safety consultant in a variety of industrial settings. Flynn's deposition testimony affirmatively discloses a long career in providing safety-related advice concerning industrial machinery and manufacturing operations to help prevent workplace injuries. Although the Flynn admits that he has no specific experience investigating a failure-to-warn case in the context of garage door installation, Flynn has made "many

2

recommendations over the years on garage doors in the conduct of . . . [his] business."

(Flynn Deposition 21.) More importantly, Flynn appears to be familiar with the types of

safety mechanisms available in the overhead garage door industry because of their

similarity to safety mechanisms available for other types of industrial equipment. (See

Flynn Deposition 34-6, 67.) (noting the various types of electrical wiring systems

available to help prevent crush injuries while operating an overhead garage door

including, but not limited to, constant-pressure switches, photo-electric cells, and infrared

sensors). Flynn is thus qualified to testify as to the general types and availability of

safety mechanisms prevalent in the overhead garage door industry.

*B. Relevancy and Reliability of Flynn's Testimony*

Wayne-Dalton next claims that Flynn's anticipated testimony lacks sufficient

reliability and relevance to be admissible. The Law Court has provided guidance

concerning the admissibility of expert testimony: "A proponent of expert testimony must

establish that (1) the testimony is relevant pursuant to M.R. Evid. 401, and (2) it will

assist the trier of fact in understanding the evidence or determining a fact in issue."

*Tolliver*, 2008 ME 83, ¶ 29, 948 A.2d at 1233 (*quoting Searles v. Fleetwood Homes of*

*Pa., Inc.*, 2005 ME 94, ¶ 21, 878 A.2d 509, 515-16). This admissibility determination

additionally requires the court to ascertain whether the expert's science or methodology is

sufficiently reliable to make an expressed opinion probative. *Tolliver*, 2008 ME 83, ¶ 29,

948 A.2d at 1233 (*quoting State v. Irving* 2003 ME 31, ¶ 12, 818 A.2d 204, 208).

Flynn's general knowledge of the safety mechanisms available for industrial

machines, which are similar, if not identical, to those available for use with overhead

garage doors, is relevant to the issue of whether the Wayne-Dalton and Architectural

3

Doors and Windows owed affirmative duty to warn on the facts of this case. That is, Flynn's testimony may help the jury decide whether the defendants knew or should have known that installing a replacement door on an existing operating system lacking a modern safety device, such as a constant pressure switch, might constitute a danger sufficiently serious to require a warning. *Pottle v. Up-Right*, 628 A.2d 672, 675 (Me. 1993). Moreover, Flynn's testimony may help the jury understand, in layman's terms, the various types of safety mechanisms available for garage door operating systems and how these safeguards function. Therefore, Flynn's testimony, based on his experience as a safety consultant, is sufficiently reliable with respect to the availability and operation of garage door safety mechanisms to be probative of the threshold duty to warn issue.

The Court, however, agrees with Wayne-Dalton that Flynn's ability to testify to the ultimate issue on the case, liability for failure to warn, rests on dubious grounds. *But see* M.R. Evid. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Whether the general safety standards for garage doors promulgated by the American National Standards Institute ("ANSI"), and specifically Underwriters Lab Standard 325 ("UL 325"), defines the relevant "duty" is a question of considerable debate among the parties, and was the subject of the Court's Order on Defendants' Motion for Summary Judgment. During his deposition, Flynn appeared somewhat unfamiliar with the details of the ANSI standards and the specific applicability of UL 325 to commercial-grade, replacement garage doors. The plaintiff maintains that Flynn has since remedied any deficient understanding of the ANSI standards and UL 325 and will be able to relate more informed testimony at trial. (Plaintiff's Memorandum in Opposition to Defendants'

4

Motions *in Limine* to Exclude the Testimony of Robert Flynn 5.); *see* M.R. Evid. 703

(noting that the facts or data upon which an expert bases an opinion may be "perceived

by or made known to the expert at or before the hearing"). Notwithstanding this alleged

cure, Flynn may opine that the ANSI standards and UL 325 are applicable on the facts of

this case and which may, depending upon the weight assigned to his testimony by the

jury, inform the duty to warn analysis.

Given that the ANSI standards and UL 325 address only the threshold duty to

warn inquiry, Flynn's anticipated testimony will have little bearing on the remaining

failure-to-warn issues necessary to establish a *prima facie* strict products liability case;

specifically, whether the actual warning on the product, if any, was inadequate and

whether the inadequate warning constituted the proximate cause of the plaintiff's injuries.

*Pottle*, 628 A.2d at 675.

The Court will scrutinize closely any effort by the plaintiff to elicit testimony

from Flynn that is indicative of defendants' ultimate liability. *See* Field and Murray,

*Maine Evidence* § 704.1 at 406 (6th ed. 2007) (permitting the trial judge to limit the

scope of expert testimony under M.R. Evid. 704 under circumstances where the

testimony is clearly unhelpful to the jury or reflects an unabashed attempt to "choose []

up sides"). If requested, the Court will allow voir dire of Mr. Flynn by either defense

counsel prior to trial. Counsel shall request such a hearing to be set during the month of

November of 2009, or at other time and date to be agreed upon by the parties and the

Court, but prior to jury selection.

The entry is:

1.    Defendant Wayne-Dalton Corp.'s motion *in limine* to exclude the expert testimony of Robert Flynn, filed on July 30, 2009, is **DENIED**.

2.    Defendant Architectural Doors and Windows' motion *in limine* to exclude the expert testimony of Robert Flynn, filed on August 4, 2009, is **DENIED**.

3.    This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: September 15, 2009

M. Michaela Murphy
Justice, Superior Court

6

STATE OF MAINE                                  SUPERIOR COURT
PENOBSCOT, ss.                                CIVIL ACTION
                                         DOCKET NO. CV-07-282



CRAIG BURNS,

           Plaintiff,

    V.                                         **ORDER ON MOTIONS**
                                                   **FOR SUMMARY**
WAYNE-DALTON CORP, and                               **JUDGMENT**
ARCHITECTURAL DOORS AND
WINDOWS,

           Defendants.

Pending before the Court are defendants' Wayne-Dalton Corp. (Wayne-Dalton) and Architectural Doors and Windows f/k/a Portland Glass (ADW), motions for summary judgment filed pursuant to M.R. Civ. P. 56. The Court has reviewed the parties' filings on the matter and denies the motions.

## BACKGROUND

Unless indicated otherwise, the parties agree to the following facts. On November 12, 2001, Plaintiff alleges that he was seriously injured while walking under a commercial garage door that closed on him at his place of employment, Whited Ford Truck Center ("Whited"), in Bangor, Maine. The original garage on property was constructed in 1961 and Whited took possession of the property in 1987. At the time Whited took possession, large wooden doors covered the entrance to the garage. Whited controlled the movement of the garage doors with operators manufactured by ABL Enterprises in Newburg, New York, serial number T8792. The operators and accompanying controls allowed Whited to open and close the garage doors

automatically—i.e., by an electronic switch. The original ABL operating system did not, however, contain an "anti-crush" device, such as a photo-eye sensor or a reversing edge mechanism, that would trigger the door to stop or reverse in the event it sensed an obstruction. Nor did the original ABL operating system have a "constant pressure" switch, which would require an employee intending to close a garage door to monitor activity around the door and to release the switch to prevent the door's further closure.

In 1996, Whited desired to replace two of the old wooden doors with modern steel garage doors. On or about September 26, 1996, Whited purchased from ADW two commercial-grade, replacement garage doors manufactured by defendant Wayne-Dalton. The parties' various statements of material facts affirmatively disclose that Wayne-Dalton, at no point, had any direct contact with Whited, but only with ADW, the commercial installer of the prefabricated, Wayne-Dalton doors. At the time of installation, Whited neither requested nor ordered a replacement operating system complete with an "anti-crush" sensing device or a "constant pressure" switch. Instead, ADW installed the Wayne-Dalton doors directly on the existing ABL operating system. Whited operated the doors on the existing ABL operating system without a safety-mechanism until the time of plaintiff's injury on November 12, 2001.

## DISCUSSION

### A.    Standard of Review

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; M.R.

2

Civ. P. 56(c). A contested fact is material when if it could potentially affect the outcome of the litigation under the governing law. *Id.* A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.*; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

Essentially, the Court determines whether there is a genuine issue of material fact by comparing the parties' statements of material facts and corresponding record references. *See, e.g., Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 8 , 742 A.2d 933, 938. The court will review the evidence in the light most favorable to the non-moving party. *Cookson v. Brewer School Dep't*, 2009 ME 57, ¶ 12, --- A.2d ---.

## B.    Duty to Warn

The plaintiff filed a strict products liability[1] action alleging that defendants Wayne-Dalton and ADW supplied Whited with a defective and unreasonably dangerous commercial-grade garage door without properly warning him of the risks associated with the use of the door. (Complaint ¶¶ 12, 18.) The plaintiff does not allege that the garage door supplied by Wayne-Dalton and installed by ADW suffered from a manufacturing or design defect, but only that the door's defectiveness emanates from the defendants'

---

[1] Maine's statute on strict products liability provides:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2008).

3

failure to warn him of the potential risks of using the door. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 539-40 (Me. 1986) (predicating failure-to-warn liability on Restatement (Second) of Torts § 402A cmt. j). Consistent with plaintiff's strict liability theory, the Law Court has adopted the majority view that a product "though faultlessly made, may nevertheless be deemed 'defective' [under 14 M.R.S.A. § 221] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and no warning is given." *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 196 (Me. 1990)(citation omitted). Whether framed in terms of negligence or strict liability, the Law Court has noted that a failure-to-warn claim requires essentially the same analysis. *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) (citation omitted). Generally, "an action for failure to warn requires a three part analysis: (1) whether defendant had a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury." *Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (citing *Pottle*, 628 A.2d at 675).

The defendants' respective motions for summary judgment challenge only whether they had a duty to warn the plaintiff. The Court will focus solely on this threshold inquiry. As a general rule, "the supplier of a product is liable to expected users for harm that results from foreseeable uses of the product if the supplier has reason to know that the product is dangerous and fails to exercise reasonable care to so inform the user." *Pottle*, 628 A.2d at 675. The foreseeability component tests the reasonableness of the defendant's conduct and provides the standard of care applicable to a strict liability, failure-to-warn action. *See Bernier v. Raymark Indust., Inc*, 516 A.2d 534, 540 (quoting

4

*Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1088) ("A seller is under a duty to warn of only those dangers that are reasonably foreseeable. The requirement of foreseeability coincides with the standard of care in negligence cases in that a seller must exercise reasonable care and foresight to discover a danger in his product and to warn users and consumers of that danger.") The duty to warn, then, "arises when the manufacturer knew or should have known of a danger sufficiently serious to require a warning." *Pottle,* 628 A.2d at 675. The defendants invest considerable energy in arguing that general safety guidelines published by the American National Standards Institute ("ANSI")—governing the use, sale, and installation of garage door operating systems— establish the standard of care in this case and absolve them of an duty to warn. The defendants' argument, however, fails to withstand analysis.

1. *Wayne-Dalton's Motion for Summary Judgment*

Wayne-Dalton, the manufacturer of the garage door installed on the Whited premises, argues that it owed no affirmative duty to warn the plaintiff of potential dangers posed by the replacement door. Relying heavily on the deposition testimony of plaintiff's liability expert, Robert Flynn, Wayne-Dalton claims that generally accepted ANSI safety standards do not require a duty to warn where, as here, the manufacturer merely provides a replacement door for use on an existing operating system. (Wayne Dalton's Statement of Material Facts ¶21) [hereinafter WDSMF]. Flynn's testimony, according to the Wayne-Dalton, establishes the following:

> (1) The ANSI provides safety standards applicable to the operating systems on which garage doors are connected. (Flynn Deposition 39; WDSMF ¶21).
>
> (2) The ANSI standard, under Underwriter Lab Standard 325 (UL 325), requires a garage door and its operating system, if sold as a unit, to have a safety mechanism to prevent crush injuries. (Flynn Deposition 29-33; WDSMF ¶19).

5

(3) Manufacturers, however, can and often do sell "replacement" commercial garage doors for installation onto pre-existing operating systems. (Flynn Deposition 24; WDSMF ¶¶ 17, 18).

(4) A replacement garage door must conform to the ANSI standard *unless* the door can be operated manually by a chain-hoist (pulley) system. (Flynn Deposition 38-39) (emphasis added).

Wayne-Dalton asserts that because the garage door installed at Whited *could* be operated manually the ANSI standards do not apply, and therefore, it owed no affirmative duty to warn the plaintiff of the possible dangers of using the replacement door with an existing operating system that lacked a modern safety mechanism. *See* Wayne-Dalton's Answer to Plaintiff's First Set of Interrogatories ¶10 ("Thermospan 150 door in question is indeed designed for use without an operator or opener and can be closed manually with a chain hoist. The door can also be used with a commercial opener/operator.").

While the import of ANSI standards may become a critical component of Wayne-Dalton's effort to shield itself from liability at trial, Wayne-Dalton misplaces reliance on the ANSI standards for the purposes of summary judgment. The threshold duty to warn inquiry is not contingent on general ANSI safety standards or whether a replacement door can be operated manually, but rather, on whether the defendants acted reasonably or unreasonably in failing to warn the plaintiff of the potential dangers associated with the replacement garage door installed on the Whited premises. *See Pottle*, 628 A.2d at 675 (noting that a duty to warn exists where "the manufacturer knew or should have known of a danger sufficiently serious to require a warning"); *Bernier,* 516 A.2d at 39 (providing that the pivotal inquiry in a strict liability failure-to-warn case is the reasonableness of the manufacturer's conduct). Framed another way, the Court views the threshold duty to

warn inquiry, on the facts of this case, as whether Wayne-Dalton *knew or should have known* of potential hazards posed by the sale, installation, and use of a replacement garage door on an operating system that lacked modern safety features.

The Court is not prepared to summarily dismiss the plaintiff's failure-to-warn claim, as a matter of law,[2] where the plaintiff has proffered material facts sufficient to create a genuine dispute concerning the existence of a duty to warn. Wayne-Dalton, neither in its motion for summary judgment, nor in its statements of material facts, specifically addresses the foreseeability issue. Notwithstanding the alleged applicability of ANSI standards, Wayne-Dalton has offered no record evidence tending to demonstrate that the company could not have anticipated the increased potential for crush injuries to occur on the facts of this case. The plaintiff, on the other hand, presented evidence that the replacement door in question was of a dimension and weight to make it unsafe for use on an antiquated operating system. (Plaintiff's Statement Additional Facts ¶¶ 30, 32 [hereinafter PSAF].) The testimony of Edward Johnston, a Wayne-Dalton employee, establishes that installing a replacement door on a "single push" operating system runs a greater risk of causing crush injuries. (PSAF ¶36). Similarly, Johnston testified that he would alert the customers to the dangers of installing a replacement door on an operating system lacking, at the very least, a constant-pressure switch to help prevent crush injuries. (PSAF ¶¶ 35, 36). The Johnston testimony also established that Wayne-Dalton, as a matter of course, does not provide warnings or safety labels to indicate its replacement

---

[2] Whether the "duty to warn" inquiry is a threshold issue solely for the Court to decide as a matter of law or more properly suited for preliminary consideration by the jury is matter of debate among legal scholars. *See generally* George W. Flynn & John J. Laravuso, *The Existence of a Duty to Warn: A Question for the Court or the Jury?*, 27 Wm. Mitchell Law Review 663, 646–51 (2000) (advocating the view that where the existence of duty to warn is subject to reasonable dispute, courts should submit issues of foreseeablity to the jury "as a precursor to determining the existence of a duty").

7

doors should not be installed on operators that lack an anti-crush mechanism. (PSAF ¶ 37).

The Court does not find the deposition testimony offered by the Robert Flynn dispositive for the purposes of summary judgment. Even if Flynn unequivocally stated that no duty to warn existed in the facts of this case, it does not necessarily follow that defendants have proved the absence of a duty to warn. *Cf. Fisherman's Wharf Associates II v. Verrill & Dana*, 645 A2.d 1133, 1136 (Me. 1994) ("[W]hether the expert's testimony accurately reflects the standard of care applicable to the circumstances of the case is a question of fact to be resolved by a trier of fact.") (citation omitted). Furthermore, although expert testimony may "embrace[] an ultimate issue of the case to be decided by a trier of fact," M.R. Evid. 704, the admissibility of expert opinion is always subject to the discretion of the trial court. *See* Field & Murray. *Maine Evidence* § 702.2 at 406 (6th ed. 2007) ("The judge has the usual discretion to exclude under Rule 403 opinions the probative value of which is substantially outweighed by the danger of unfair prejudice or confusion or that would be a waste of time."). This wide degree of discretion gives the Court the ability to exclude any opinion plainly unhelpful to the trier of fact and otherwise prevent unabashed opinions bent on "choosing up sides" from being offered into evidence. *Id.* Focusing almost entirely upon Flynn's opinion of the applicability of the ANSI, instead of on the issue of foreseeability, Defendants miss the mark for purposes of achieving summary judgment.

*2. ADW's Motion for Summary Judgment*

ADW filed separate motion for summary judgment adopting the arguments and statement of material facts submitted by Wayne-Dalton. (ADW Motion for Summary Judgment With Incorporated Memorandum of Law 2.) To the extent the Court responds to Wayne-Dalton's motion for summary judgment above concerning the duty to warn standard, the Order applies with equal force to ADW.[3]

### III. CONCLUSION

The defendants' argument that the ANSI safety standards for garage operators absolves them of a duty to warn fails to address the threshold foreseeability inquiry of whether the defendants knew or should have known of potential dangers associated with the sale, installation, and use of a replacement garage door on an operating system that lacked modern safety features. Viewing the evidence in a light most favorable to the plaintiff, a genuine issue of material fact exists on the issue of whether the defendants owed an affirmative duty to warn the plaintiff.

The entry is:

1.      Defendant Wayne-Dalton Corp.'s motion for summary judgment, filed on December 24 2008, is **DENIED**.

2.      Defendant Architectural Doors and Windows' motion for summary judgment, filed on January 2, 2009, is **DENIED**.

3.      This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

---

[3] The Court notes, consistent with ADW's reply memorandum, that the plaintiff has perhaps mischaracterized, or changed, his failure-to-warn claim against ADW. (*See* Plaintiff's Memorandum of Law in Opposition to Architectural Doors and Windows' Motion for Summary Judgment 2) ("[A]s the installer of the door . . .[ADW] clearly would know whether the door would be used with an operator, and had a duty to warn that the door should only be used with an operator with a safety mechanism. . . ."). This particular allegation by the plaintiff is not before the Court. To the extent the plaintiff intended to fashion his failure-to-warn claim against ADW on similar grounds as the claim against Wayne-Dalton—i.e., a failure to warn of the increased potential for crush injuries when installing a replacement door on operating system that lacks safety mechanisms—that claim will survive.

9

Date: September 11, 2009

M. Michaela Murphy
Justice, Superior Court

10

CRAIG BURNS VS WAYNE-DALTON CORP ET AL

                                              CASE #:BANSC-CV-2007-00282
-----------------------------------------------------------------------------

    SEQ TITLE                    NAME                              DOB   ATTY
        PL          CRAIG BURNS    BY ARTHUR GREIF ESQ            / /     T
        DEF         WAYNE-DALTON CORP   BY DAVID VERY, ESQ                T
        DEF         PORTLAND GLASS CO-NOT ON AMENDED COMPLAINT            PRO
                                                                          PRO
      , DEF         AMERICAN MANAGEMENT GROUP DBA PTLD GLASS CO           PRO
        DEF         GENE R COHEN REVOCABLE TR DBA-DISMISSED BY DANIEL MITCHELL, ESQ
        DEF         ARCHITECTURAL DOORS AND WINDOWS    BY STEPHEN BELL, ESQ.T