STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-11/29

JCN - Cum-11/26/2013

JUDITH TUCK, Personal Representative of )
the ESTATE OF DOUGLAS O. TUCK,        )
                                       )
          Plaintiff,                   )
                                       )
                                       )
                                       )
                                       )
     v.                                )
                                       )
                                       )
AIR & LIQUID SYSTEMS CORP., et al.,    )
                                       )
          Defendants                   )
                                       )
                                       )
                                       )
                                       )

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**
**(Motion for Summary Judgment)**

This matter is before the Court on the Motion for Summary Judgment of Defendant Crane Co. (Crane). In this action, Plaintiff seeks to recover damages allegedly resulting from the death of Douglas Tuck (the Decedent) due to his exposure to asbestos during the course of his employment at Bath Iron Works. Plaintiff seeks to recover under theories of negligence (Count I), strict products liability (Count II), and loss of consortium (Count III). Crane argues that Plaintiff has failed to establish that the Decedent was exposed to asbestos from any Crane product that contributed to his illness and death. Crane, therefore, requests summary judgment in its favor.

I.   FACTUAL BACKGROUND

The following facts are undisputed, except where noted. *See Fore, LLC v. Benoit*, 2012 ME 1, ¶ 2, 34 A.3d 1125. The Decedent was employed by Bath Iron Works (BIW) as an outside

1

machinist from July 1, 1976, until March 1, 2002. (S.S.M.F. ¶ 1; O.S.M.F. ¶ 1.) The Decedent worked primarily on overhauling ships, rather than new construction. (A.S.M.F. ¶ 12; R.S.M.F. ¶ 12.) Plaintiff alleges that the Decedent was exposed to asbestos from inhalation and ingestion of asbestos dust and fibers that settled on his clothing and person, which ultimately caused his mesothelioma. (S.S.M.F. ¶ 2; O.S.M.F. ¶ 2.)

The Decedent was not deposed in the course of the present litigation because he passed away before his deposition could be taken. (O.S.M.F. ¶ 5.) Instead, the parties rely in part on a deposition of the Decedent from his federal workers compensation case. (O.S.M.F. ¶ 5.) At that deposition, the Decedent did not identify any Crane product on which he worked nor did he testify regarding that he worked near Crane products while employed at BIW.[1] (S.S.M.F. ¶ 5; O.S.M.F. ¶ 5; *see also* S.S.M.F. ¶ 4.) Nevertheless, in interrogatories that the Decedent answered before his death, he recalled seeing Crane valves at his worksite, and the parties do not dispute the presence of Crane products at BIW. (S.S.M.F. ¶ 4; O.S.M.F. ¶ 4; Pl.'s Exh. B at 11.)

II. DISCUSSION

A. Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d

---

[1] Plaintiff "qualifies" this statement essentially to note that product and company identification were not relevant to the workers compensation proceeding. (O.S.M.F. ¶ 5.) The qualification is more in the nature of legal argument than a factual qualification, as it includes no record citation, a point which Crane asserts is in violation of M.R. Civ. P. 56(h)(4). (Pl.'s Obj. to O.S.M.F. ¶ 5.)

2

220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.   Applicable Law

Plaintiff's primary causes of action against Crane are in negligence and strict liability. "The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous

products," including liability for defects based on the failure to warn of the product's dangers.[2] *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburg Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[3] In *Lohrmann*, the court announced and applied the "frequency-regularity-proximity test", which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Lohrmann*, 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[4] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. CV-

---

[2] In addition, strict liability can attach for a design defect or a defect in the manufacturing process. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993). Those theories of liability are not at issue in this case.

[3] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm ..."

[4] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

4

04-57 at 7 (Me. Super. Ct., April 2, 2007) (Gorman, J).[5] In rejecting the *Lohrmann* standard,

Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product
> was a substantial factor in causing the plaintiff's injury and (2) product nexus –
> that the defendant's asbestos-containing product was *at the site where plaintiff
> worked or was present, and that the plaintiff was in proximity to that product at
> the time it was being used* ... a plaintiff must prove not only that the asbestos
> products were used at the worksite, but that the employee inhaled the asbestos
> from the defendant's product.

*Campbell* at 5-6. (citing, 63 Am. Jur. 2d Products Liability § 70 (2001).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained

period of time while under the standard applied by Justice Gorman a plaintiff must only

demonstrate that plaintiff was in proximity to the product at the time that it was being used, the

*Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the

applicable standard cannot, however, be controlled by the standard's degree of difficulty.

Instead, the standard must be consistent with basic principles of causation. In this regard, the

Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative

assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the

fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a

question of fact. The Court perceives of no basis in law to deviate from this longstanding legal

principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition

to producing evidence of medical causation, a plaintiff must establish the product nexus through

competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product

was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and

that the plaintiff had personal contact with the asbestos from the defendant's product. If a

---

[5] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiff must first demonstrate that: (1) Crane's product was at BIW, (2) Crane's product at BIW contained asbestos, and (3) the Decedent had personal contact with asbestos from Crane's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury."). In other words, regardless of whether theory of liability is general negligence, negligent failure to warn, or strict product liability failure to warn, Plaintiff must present evidence that the Decedent was at least in the presence of Crane's asbestos containing products or asbestos related activity to make out a prime facie case of each cause of action.

The undisputed record places Crane products at the Decedent's worksite. The parties, however, dispute several aspects of the record, particularly with respect to whether Crane's products contained asbestos and whether the Decedent had contact with asbestos originating from Crane's products.

*The Decedent's contact with Crane's products*

Crane asserts: "Although Plaintiff stated that the company name of 'Crane Valves,' among others, was familiar to the Decedent as 'having been present in the work areas during [his] employment' at BIW, Plaintiff's answers did not state that the Decedent worked on or near a Crane valve while employed at BIW." (S.S.M.F. ¶ 4.) Crane cites to interrogatory responses

6

that the Decedent provided before he passed away. (S.S.M.F. ¶ 4.) Plaintiff denies this statement, asserting the Decedent did work on Crane products, relying upon the answer to interrogatory number 18 and the affidavit of William Lowell. (O.S.M.F. ¶ 4; *see also* A.S.M.F. ¶ 13.)

In the interrogatory in question (number 18), the Decedent states:

I recall removing asbestos adhesive, cement, gaskets, pipecovering, tape and valve packing during this time. The company names of Babcock & Wilcox, DeLaval, Foster Wheeler, Garlock, General Electric, Goulds Pumps, Hopeman Brothers, Johns Manville and Crane Valves are familiar to me as having been present in the work areas during my employment at Bath Iron Works.

(Def.'s Exh. B at 11; *see* S.S.M.F. ¶ 4.) Construed most favorably to Plaintiff, the interrogatory answer supports the determination that the Decedent saw Crane valves in his work at BIW and details what type of work he did with asbestos at BIW. *See Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. Without more, the record could arguably support Crane's request for summary judgment. However, the record is not limited to the Decedent's interrogatory answers.

Plaintiff also filed the affidavit of William Lowell, who worked at BIW during the same time as the Decedent and now consults on asbestos cases (O.S.M.F. ¶ 4; Pl.'s Exh. A ¶¶ 2, 7), states:

8. I personally knew and worked with Douglas Tuck during his employment at BIW from 1976 until my retirement in 1995. I have reviewed his BIW employment records as an outside machinist and specifically recall him working on many of the overhaul ships. One of his jobs as an outside machinist was to remove machinery, including valves to be overhauled in the shop. Other valves would be overhauled in place on board the ship. I specifically recall Mr. Tuck working onboard the following ships which were overhauled at BIW: USS Brusby, USS Detroit, USS Beary, USS Conyngham, and the USS King. I specifically recall that the Conyngham and King had a significant number of Crane Co. valves which were overhauled by Mr. Tuck and other outside machinists.

7

9.   Crane Co[.] valves contained asbestos gaskets and asbestos packing which were removed and replaced during the overhaul process. As an outside machinist Mr. Tuck would be required to remove the gaskets and packing from the valves and during the course of this work its more likely than not that he was exposed to asbestos from the packing and gaskets in the Crane Co. valves.

(Pl.'s Exh. A ¶¶ 8-9.)

When considered in the light most favorable to the Plaintiff, Mr. Lowell's affidavit testimony includes evidence from which a fact finder could conclude that the Decedent worked on or around Crane valves. At a minimum, viewing the evidence most favorably to the Plaintiff, there is at least an issue of material fact as to whether the Decedent "overhauled" and thus came into contact with Crane valves. *See Lightfoot,* 2003 ME 24, ¶ 6, 816 A.2d 63; *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573.

### *The Decedent's contacts with asbestos originating from Crane's products*

Crane argues that the record does not support that the Decedent had contact with asbestos-containing materials manufactured by Crane. Crane specifically asserts that there is no evidence that any Crane product that the Decedent may have worked on contained asbestos when it left Crane's control. Plaintiff asserts that William Lowell's affidavit establishes that Crane products contained asbestos and that the Decedent was exposed to asbestos originating from Crane's products.

Crane does not suggest that its products never contained asbestos. The record supports that until the mid-1980s, Crane manufactured industrial valves with asbestos components. (A.S.M.F. ¶ 14; R.S.M.F. ¶ 14.) In his affidavit, Mr. Lowell flatly states that "Crane Co[.] valves contained asbestos gaskets and asbestos packing which were removed and replaced during the overhaul process." (Pl.'s Exh. A ¶ 9.) On this record, therefore, a fact finder could reasonably conclude that the Crane valves contained asbestos.

8

Plaintiff asserts that the Decedent was exposed to asbestos from valve gaskets and packing during the overhaul process, citing the Lowell affidavit. (A.S.M.F. ¶ 14.) Preliminarily, Mr. Lowell's conclusion that "it is more likely than not" that the Decedent was exposed to the asbestos from Crane's products is not controlling. The issue is whether the record evidence contains sufficient evidence from which a fact finder could rationally conclude that the Decedent was exposed to asbestos from Crane's products. Here, while Plaintiff has not produced direct evidence to establish that the Decedent was exposed to asbestos from Crane's products, Plaintiff has provided sufficient circumstantial evidence from which a fact finder could reach such a conclusion. Mr. Lowell has testified that the Decedent worked on two ships that had a significant number of Crane valves, which valves the Decedent helped to "overhaul." Given that the record also contains evidence from which a fact finder could conclude that the Crane valves contained asbestos, viewing the evidence most favorably to the Plaintiff, the record contains evidence from which a fact finder could conclude that the Decedent was exposed to asbestos - containing Crane valves. Plaintiff, therefore, has established for summary judgment purposes, the necessary nexus between the Decedent and asbestos within Crane's product.

III.    CONCLUSION

Based on the foregoing analysis, the Court denies Crane's Motion for Summary Judgment.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 11/26/13

_____
Justice, Maine Business & Consumer Court

**Judith Tuck, Personal Representative of the Estate of Douglas O. Tuck v. Air & Liquid Systems Corp., et al.**
**BCD-CV-11-29**


**Judith Tuck, Personal Representative of the Estate of Douglas O. Tuck**
    **Petitioners / Plaintiffs**

    Counsel:                  William G Higbee, Esq.
                                 McTeague, Higbee, Case, Cohen, Whitney,
                                    & Toker PA
                                 Four Union Park
                                 PO Box 5000
                                 Topsham, ME 04086


**Air & Liquid Systems Corp., et al.**
    **Respondents / Defendants**

    Counsel:                  David McConnell
                                 Perkins Thompson PA
                                 One Canal Plaza, Suite 900
                                 PO Box 426
                                 Portland, ME 04112