STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-19

)
GWENDOLYN RICHARDS, Individually )
and as Personal Representative of the )
ESTATE OF AUSTIN RICHARDS, JEAN )
ANN NOONAN, JEFFREY RICHARDS, )
JERRY RICHARDS, and JOEL )
RICHARDS, )
)
Plaintiffs, )
)
v. )
)
ARMSTRONG INTERNATIONAL, INC., )
CRANE CO., DATRON INC. )
LIQUIDATING TRUST, GOULDS )
PUMPS, INC., and NASH ENGINEERING )
CO., )
)
Defendants )
)

**DECISION AND ORDER**
(Goulds Pumps, Inc.)

This matter is before the Court on the renewed motion for summary judgment of Defendant Goulds Pumps, Inc. (Goulds). In this action, Plaintiffs seek to recover damages allegedly resulting from the death of Austin Richards (the Decedent) due to his exposure from asbestos during the course of his employment at the Great Northern Paper Company (Great Northern). Plaintiffs allege that as a result of exposure to asbestos insulation used with products manufactured by each of the Defendants, the Decedent contracted mesothelioma, which resulted in his death.

I.   PROCEDURAL BACKGROUND

In its original motion for summary judgment, Goulds cited two principal bases in support of its request for judgment. First, Goulds argued that Plaintiffs could not establish the requisite product nexus. That is, Goulds maintained that Plaintiffs could not demonstrate that the

1

Decedent had sufficient contact with Goulds' product to permit a rational fact finder to impose liability upon Goulds. Goulds also argued that summary judgment was appropriate because Goulds did not have a duty to warn about the dangers that might be inherent in products that might be used in connection with Goulds' product.

Upon review of the summary judgment record, the Court found that Plaintiffs had established a prima facie case for product nexus, and concluded that the factual record generated a possible basis for Plaintiffs to prevail under a duty to warn theory. The Court, therefore, denied Goulds' motion for summary judgment.

As to the possible basis for Goulds' liability under a duty to warn theory, in its decision denying summary judgment, the Court wrote,

> the issue is whether the same policy considerations that support the general rule [imposing liability on a manufacturer for dangers inherent in its own product] justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product. Because the state of the record on this issue is uncertain, and because the parties have not directly addressed the issue, the Court will deny Goulds' motion for summary judgment. However, the Court will confer with the parties to determine whether further briefing on or consideration of Goulds' request for summary judgment is warranted.

(Decision and Order dated April 5, 2012 (hereinafter, "MSJ Decision"), at 11-12). During a subsequent conference with the parties, Goulds requested, and was granted, leave to renew its motion for summary judgment, and to file a supplement memorandum in support of the motion.

II. DISCUSSION

A. Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those

2

statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.    Duty to Warn

Plaintiffs contend that Goulds had a duty to warn of the dangers of asbestos insulation because the utilization of asbestos insulation with Goulds's product was a reasonably foreseeable use of its product that rendered the products dangerous. Plaintiffs assert that Goulds had a duty to warn under theories of negligence and strict liability.

1.    *Strict Liability* – 14 M.R.S. § 221

3

The alleged defect in the present case is the failure to warn of the dangers of asbestos used to insulate Goulds' pumps. Maine's product liability statute, 14 M.R.S. § 221 (2012),[1] lays out the essential elements of the cause of action asserted against a seller:

(1) the named defendant sold the goods or products;

(2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;

(3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;

(4) the defendant was engaged in the business of selling the goods or products;

(5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and

(6) the plaintiff or the plaintiff's property suffered physical harm.

*Burns v. Architectural Doors & Windows.* 2011 ME 61, ¶ 23 n.7, 19 A.3d 823. Further, in a defective product case based on a failure to warn, a plaintiff must also show that "(1) the defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury." *See id.* ¶ 23.

Goulds asserts that it cannot be liable for the harm caused by asbestos fiber because Goulds did not manufacture or supply the asbestos and the asbestos was added after the pumps left Goulds's control. Goulds contends that it has no duty to warn of the dangerous propensities

---

[1] In full, the statute provides:

> One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S. § 221 (2012).

4

of a third party's products. Plaintiffs counter that they need not show the pumps themselves were defective; Plaintiffs assert that the pumps, when put to the foreseeable use of being wrapped in asbestos insulation, became dangerous and Goulds had a duty to warn of those dangers. Plaintiffs cite *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195 (Me. 1990), for this proposition.

In *Lorfano*, the Law Court stated:

> It is now clear that a product, "although faultlessly made, may nevertheless be deemed 'defective' under the [statute] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given."

569 A.2d at 196 (quoting *Canifax v. Hercules Powder Co.*, 46 Cal. Rptr. 552, 558 (Cal. Ct. App. 1965)). Plaintiffs interpret *Lorfano* as to require, under Maine law, a supplier or seller to warn about the dangers of a third party's product when the third party's product is used in conjunction with the supplier or seller's product. Thus, Plaintiff asserts that the pumps at issue were defective because Goulds failed to warn about the dangers of asbestos insulation. As explained below, the Court does not believe that Goulds was obligated to warn of the dangers of the asbestos containing material.

First, the Law Court has only described a manufacturer's duty to warn in terms of dangers that are inherent in the manufacturer's own products. *See Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about *its hazards*, a product is sold in a condition unreasonably dangerous to the user." (emphasis added)); *Bernier*, 516 A.2d at 537 (discussing whether "a manufacturer's actual or constructive knowledge of *his product's* danger" is relevant (emphasis added)); *cf. Bouchard v. Am. Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (rejecting plaintiff's argument that "the supplier of a safe product has a duty to warn against

5

another supplier's dangerous product" as unsupported by legal authority or the evidence in the record). The Law Court has never held that a manufacturer of products has a duty to warn of dangers inherent in a third party's product. The Court notes that this conclusion is consistent with other recent strict-liability cases involving the duty of equipment manufacturers to warn of the dangers of asbestos insulation. *See O'Neil v. Crane Co.*, 53 Cal. 4th 335 (Cal. 2012); *Braaten v. Saberhagen Holdings*, 198 P.3d 493 (Wash. 2008); *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008).

In addition, holding a manufacturer liable for defects in another party's product is contrary to the purpose of strict liability. Strict products liability attaches to a seller (or manufacturer), in part, because of the seller's superior knowledge of the attributes and risks of its own product. *See Bernier*, 516 A.2d at 538 (holding that the manufacturer's knowledge of the dangers of its own product is relevant in establishing a duty to warn).

> [T]he justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

RESTATEMENT (SECOND) OF TORTS § 402A cmt. c (1965).[2]

The reasoning of the Restatement is sound, and is consistent with the Law Court's decision in *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993) ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about *its*

---

[2] Maine's strict liability statute is derived from section 402A of the RESTATEMENT (SECOND) OF TORTS. *See Bernier*, 516 A.2d at 537-38 (relying on the comments to section 402A in interpreting Maine's strict liability statute).

6

*hazards*, a product is sold in a condition unreasonably dangerous to the user." (emphasis added)). Indeed, as the Court stated in its Decision and Order, "the Law Court's prior decisions as to the scope of a manufacturer's duty, and sound public policy (i.e., a manufacturer is appropriately responsible for any dangers inherent in *its* product) militate against the adoption of a general rule that requires a manufacturer to warn about the hazards of a product that might be used in connection with the manufacturer's product." (MSJ Decision 11). Nevertheless, as explained in the MSJ Decision, this case and the asbestos litigation generally cause the Court to consider whether

> the same policy considerations that support the general rule justify the imposition of a duty to warn of another's product where a manufacturer's product *must* incorporate another's product in order to have any practical use for the intended user, and the other's product is inherently dangerous, and the manufacturer knew or should have known of the hazards inherent in the other's product.

(Decision and Order, pp.11-12).

The question, as posed by the Court in the MSJ Decision, was purposefully narrow. That is, the Court questioned whether a manufacturer should have a duty to warn of danger's inherent in another product where the manufacturer's product *must* use the other product. The Court believes that many of the policy considerations that require a manufacturer to warn of dangers to its product would support the imposition of a duty on a manufacturer to warn of dangers that might be inherent in another product that must be used in order for the manufacturer's product to function properly. In other words, if a product could only function if incorporated with another product, the public could reasonably expect the manufacturer to be aware of the inherent dangers of the other product and to warn of those dangers.

The circumstances under which the law should recognize the duty are, however, limited. To require manufacturers to be aware of and warn of dangers inherent in every product that could be used with, but is not required to be used with, the manufacturer's product would not

7

only be unreasonable, but would be inconsistent with the bases for the imposition of the duty to warn as set forth in the Restatement.

In this case, the Court is not convinced that the duty to warn as to another's product should be extended to Goulds. The record establishes that Goulds pumps do not require the external insulation (i.e., the asbestos containing product) in order to function properly. In other words, the pumps can perform their job (i.e., move fluids) regardless of whether the insulation is applied.

On the record before the Court, however, the Court's analysis does not end with the Court's assessment of whether Goulds had a duty to warn of the dangers of asbestos containing material manufactured by another manufacturer. In opposing the motion for summary judgment, Plaintiffs cite testimony from a Goulds corporate representative (Eugene Bradshaw) in which he testifies that some Goulds pumps, specifically model 3196, were insulated by Goulds before leaving a Goulds facility. (Opp. S.M.F. ¶ 3; Henderson Aff. Exh. F, at 163-67.) Great Northern did order several model 3196 Goulds pumps. (A.S.M.F. ¶ 23.) Viewing the Goulds corporate representative testimony in the light most favorable to Plaintiffs, the testimony generates an material issue of fact as to whether asbestos containing material was included as part of some of the Goulds pumps when Goulds shipped the pumps to Great Northern. Insofar as the Court has previously determined that Plaintiffs have demonstrated the necessary product nexus to establish a prima facie case, the factual dispute regarding the inclusion of asbestos containing material on the model 3196 pumps prevents the entry of summary judgment.

The Court recognizes that Goulds challenges the quality of the evidence, and maintains that Plaintiffs cannot establish that the model 3196 pumps that might have been delivered to

8

Great Northern contained asbestos material. These questions are, however, for the fact finder to assess.[3]

### 2. *Negligence*

In negligence, the duty of a manufacturer to warn of the dangers of its products is similar to the duty to warn in strict products liability actions. *See Bernier*, 516 A.2d at 540 ("A strict liability failure-to-warn case does resemble a negligence action because the reasonableness of the manufacturer's conduct is the critical issue.") The Law Court has applied the section 388 of the RESTATEMENT (SECOND) OF TORTS to negligence actions for the breach of a duty to warn of dangerous propensities of products:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> >
> > (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Bonin*, 2005 ME 59, ¶ 10, 873 A.2d 346 (quoting RESTATEMENT (SECOND) OF TORTS § 388).

In their briefing, the parties draw no distinction between the duty to warn in strict liability or the duty to warn in negligence.[4] The Court also perceives no appreciable difference between

---

[3] Among other things, the fact finder will have to assess Mr. Bradshaw's credibility as a witness, and whether it is reasonable to infer from Mr. Bradshaw's testimony and the documentary evidence that the Decedent was exposed to asbestos particles from asbestos containing material incorporated in or applied to Goulds' pumps before the pumps left Goulds' control.

[4] Many of the recent actions brought in negligence based on the duty to warn involve the failure to warn a minor of dangerous propensities in a product. *Compare Bonin*, 2005 ME 59, ¶ 1 873 A.2d 346 (articulating the issue as "whether [the defendant] may be found negligent for supplying dangerous machinery to a minor"), *and Dickinson v. Clark*, 2001 ME 49, ¶ 9, 767 A.2d 303 (discussing whether the dangers of a wood splitter would be obvious to a

9

the two and adopts its analysis regarding strict liability duty to warn. Similarly, the Court adopts its analysis regarding the material issue of fact in dispute as to the presence of asbestos containing material in Goulds' products.

III.   CONCLUSION

Based on the foregoing analysis, the Court determines that Goulds Pumps, Inc. did not have a duty to warn of the dangers inherent in asbestos containing material that might have been applied to the Goulds' products after Goulds shipped the products. The Court otherwise denies Goulds Pumps, Inc.'s motion for summary judgment.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 1/25/13

_____
Justice, Maine Business & Consumer Court

Entered on the Docket: 1·28·13
Copies sent via Mail ___ Electronically ✓

teenager in evaluating whether the supplier had a duty to warn), *with Cuthbertson v. Clark Equip. Co.*, 48 A.2d 315 (Me. 1982) (applying section 388 to a supplier of farm equipment after the death of an adult operator).

10