William BOUCHARD et al.

v.

AMERICAN ORTHODONTICS, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs May 1, 1995.
Decided July 20, 1995.

Robert J. Daviau, Daviau, Jabar & Batten, Waterville, for Reichtels.

Harry B. Center, II, Smith Lliott Smith & Garmey, P.A., Saco, for Bouchards.

Jennifer A. Holbrook, Robinson, Kriger, McCallum & Greene, P.A., Portland, for American Orthodontics.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Plaintiffs William Bouchard and Karen Bouchard, individually and for William, and Richard Reitchel, individually and for Anastasia Reitchel, appeal from an order entered in the Superior Court (Kennebec County, *Chandler, J.*) granting a summary judgment on their products liability claims in favor of defendant American Orthodontics. Plaintiffs contend that a summary judgment was precluded by the existence of genuine issues of material fact. Finding no error, we affirm the judgment.

In 1988 a licensed orthodontist, using wires and brackets supplied by American Orthodontics, put braces on the teeth of plaintiffs William Bouchard and Anastasia Reitchel. The wires used to align the teeth were attached to the brackets on the braces with brass connecting pins, supplied by T.P. Orthodontics. When the braces were removed two years later, permanent stains were discovered on plaintiffs' teeth.

■ Plaintiffs commenced actions for strict liability pursuant to 14 M.R.S.A. § 221 (1980) [1] against defendant American Orthodontics. Plaintiffs jointly engaged a metallurgist from Massachusetts Institute of Technology, to examine the orthodontic appliances used in their treatment. After testing, the expert testified in a deposition that the brackets supplied by American Orthodontics were made of stainless steel, the material "of choice for *in vivo* applications." Although he observed that even the best grades of stainless steel are vulnerable to corrosion when used in the body, remarkably there appeared to be no corrosion whatever of the stainless steel products supplied by defendant.

The expert also noted that the pins supplied by T.P. Orthodontics were made of brass, which is "totally and spectacularly unsuitable for use in the human body in any application, ... [because] it will corrode and release salts of copper and zinc into the surrounding tissue, with adverse clinical consequences. Such results are completely foreseeable." He also testified that, although he thought the staining was caused by the corrosive products released by the brass pins, he lacked any expertise to determine whether those corrosive products might actually stain teeth. Based on this expert opinion, plaintiffs amended their complaints to add T.P. Orthodontics, supplier of the brass pins, as a defendant. No other expert was designated by any party.

The court granted American Orthodontics' motion for summary judgment at the close of discovery after determining that "plaintiff has hired an expert but his testimony is that there was nothing wrong with the stainless steel appliances supplied by American Orthodontics and that they have not caused the damage to [plaintiffs'] teeth." In response to a motion pursuant to M.R.Civ.P. 54(b)(1),[2] the court entered final judgment on behalf of American Orthodontics and left plaintiffs' claims against T.P. Orthodontics unresolved. Plaintiffs appeal from that judgment.

■ The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question before the court is solely one of law. *Bigney v. Blanchard,* 430 A.2d 839 (Me.1981). "[T]here is no issue for trial unless there is

1. 14 M.R.S.A. § 221 provides:

   One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his

   product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

2. M.R.Civ.P. 54(b)(1) provides in pertinent part:

   ... [W]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It is well settled that a summary judgment in defendant's favor is proper when plaintiff will have the burden of proof on an essential issue at trial and it is clear that defendant would be entitled to a directed verdict if plaintiff presented no more evidence than was before the court on the motion for a summary judgment. *H.E.P. Development Group, Inc. v. Nelson,* 606 A.2d 774, 775 (Me.1992). When reviewing an appeal of a grant of a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted to determine if the trial court committed an error of law. *Id.* at 775.

■ "Strict products liability attaches to a manufacturer when by a defect in design or manufacture, or by a failure to provide adequate warnings about its hazards, a product is sold in a condition unreasonably dangerous to the user." *Pottle v. Up–Right, Inc.,* 628 A.2d 672, 674–75 (Me.1993). The general rule is that the supplier of a product is liable to expected users for harm that results from foreseeable uses of the product if the supplier had reason to know that the product is dangerous and fails to exercise reasonable care to so inform the user. *Id.* at 675. Plaintiffs bear the burden of proof at trial on these issues.

The record is absolutely devoid of any evidence to support a claim that American Orthodontics' products were in any way defective. The only expert testimony presented established that there was no corrosion whatever of the wires and brackets supplied by defendant. Nonetheless, plaintiffs inexplicably argue that the court erred in determining that their expert was not qualified to testify regarding the cause of the staining and that his testimony did, in fact, raise a genuine issue regarding that cause. When, as in the present case, the expert testifies that he lacks the expertise to make a particular determination, we cannot say that, as a

matter of law, his testimony has generated a factual dispute on that issue. Furthermore, even if the expert were qualified to testify regarding causation, plaintiffs would gain nothing because he testified that the staining was caused by corrosion of the brass pins. Plaintiffs' claims against American Orthodontics must rest on a failure to warn.

■ An action for failure to warn requires a three part analysis: (1) whether defendant had a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury. *Id.* Because plaintiffs bear the burden of proof on each of these elements, summary judgment was properly granted in favor of American Orthodontics if there is insufficient evidence for the jury to find for plaintiff on even one of these elements.

Plaintiffs argue that American Orthodontics had a duty to warn against the use of T.P. Orthodontics' brass pins. They cite no authority for their claim that the supplier of a safe product has a duty to warn against another supplier's dangerous product. Plaintiffs introduced no evidence that there were any previous reports of brass pins causing staining, and plaintiffs' expert testified that he knew of none. Thus there is no evidence that defendants knew or should have known that the brass pins might be dangerous. On these facts, American Orthodontics had no duty to warn.

When viewed in the light most favorable to plaintiffs, the evidence presented would be insufficient to entitle a jury to return a verdict in their favor. Plaintiffs failed to demonstrate that the stainless steel braces provided by American Orthodontics were defective, they failed to establish any causal link between defendant's product and plaintiffs' harm and finally, they failed to demonstrate that American Orthodontics had a duty to warn of the alleged hazard created by the use of T.P. Orthodontics' brass pins. We find no merit in plaintiffs' remaining contentions.

The entry is:

Judgment affirmed.

All concurring.