STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           CIVIL ACTION
                                        DOCKET NO-AP-16-18


ALBERT TEMPESTA,
        Plaintiff

                                        **ORDER ON MOTION FOR**
                                        **PARTIAL SUMMARY JUDGMENT**
        V.


TOWN OF BENTON,
        Defendant


## INTRODUCTION AND PROCEDURAL HISTORY

Before the court for resolution is the Defendant's (Town of Benton) motion for partial summary judgment as to Counts II and V of the First Amended Complaint. This case arises out of the failure of the Town of Benton to appoint the Plaintiff (Albert Tempesta) to the position of Code Enforcement Officer (CEO) after his term of office to that position expired on March 15, 2016.

Tempesta commenced this action on April 14, 2016 with the filing of a five-count complaint seeking relief on the following grounds: appeal of the Town's action pursuant to M,R.Civ.P. 80B (Count I); violation of his procedural due process rights to notice and a hearing pursuant to 42 U.S.C. §1983; discrimination on the basis of age pursuant to 5 M.R.S. §§4572 et seq. (Count III); whistleblower retaliation in violation of 5 M.R.S. §§831 et seq. (Count IV), and; violation of 1 M.R.S. §407(2) of the Maine Freedom of Access Act (FOAA) (Count V).

On or about May 5, 2016, the Town moved to dismiss the complaint on the basis of M.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. At the same time, the Town filed its answer and affirmative defenses. Tempesta opposed the motion to dismiss on July 5, 2016. In its reply of July 14, 2016, the Town clarified that its motion to dismiss did not extend to the age discrimination and whistleblower retaliation claims.

In an Order dated November 29, 2016, the court (Mullen, J.) addressed the Town's motion to dismiss but ultimately did not actually rule on it. This appears to have been at the request of Tempesta, who wanted the court to stay any action on the motion to dismiss pending resolution of his claim(s) before the Maine Human Rights Commission (MHRC). The court granted the stay, but set forth in its order the "factual history" of the case "with a summary of the parties' respective arguments concerning the Motion to Dismiss."

On January 5, 2017, Tempesta moved for leave to file an amended complaint, which was granted on February 4, 2017. The First Amended Complaint is virtually identical to the original complaint, with the exception that it alleges that Tempesta received a notice of right to sue letter from the MHRC on December 20, 2016. The court (Stokes, J.) held a status conference with counsel for the parties on April 5, 2017. Following that conference, the court issued an order denying the Town's motion to dismiss on the basis that it appeared to the court that dismissal of Counts I, II and V was premature without "[d]iscovery and further clarification of the facts." Subsequently, on May 9, 2017, the court issued an order specifying the future course of proceedings. Thereafter, the parties pursued discovery.

On April 19, 2018, the parties filed a stipulation of dismissal of Count I (Rule 80B appeal). On October 31, 2018, the Town moved for summary

judgment on Counts II and V of the First Amended Complaint. Tempesta opposed the motion. Oral argument was held on April 25, 2019.

The following undisputed material facts are based on the summary judgment record.

## FACTUAL BACKGROUND

The Town initially appointed Tempesta as its CEO/Plumbing Inspector/Health Officer in April 2012. The "certificate of appointment" dated April 3, 2012, contained the following language: "Your term of office is to expire on March 31, 2013." Tempesta was appointed again to the same positions on March 11, 2013, and that certificate of appointment provided that his term of office would expire on March 31, 2014. Likewise, in March 2014, Tempesta was appointed again with an explicit expiration date of March 15, 2015. Finally, in March 2015, the municipal officers of the Town appointed Tempesta to the same positions with an expiration date of March 15, 2016.

Tempesta does not dispute that each of his certificates of appointment expressly provided that his term of office would expire on a specified date, the last one being March 15, 2016. Nevertheless, he contends that "[e]ven though his appointment as CEO was technically for a one-year term, no one told [him] when he was hired that, after a year, he would be let go instead of reappointed," and he expected "that he would remain employed as long as he was doing his job." (PASMF, ¶¶ 1 & 3).

On or about March 8, 2016, Tempesta was notified by a Town official that he would not be appointed again when his term of office expired on March 15, 2016. The parties disagree as to what, precisely, was said to Tempesta as to the reason the Town would not continue to appoint him as CEO, but they do not disagree that he was told that no new appointment would be made.

3

In a letter dated March 25, 2016, counsel for Tempesta wrote to the Town alleging that it had engaged in age discrimination. Moreover, the letter asserted that Tempesta "had a reasonable expectation that his employment with the Town would continue." (PASMF, Exh. 5). Tempesta gave notice that he was appealing "any decision not to reappoint him," and he requested that he continue to serve as the Town's CEO and that the "purported termination of his appointment be rescinded immediately." (*Id*).

The parties agree that the Town's Personnel Policy contains and provides for a Grievance Procedure (Article XIII), that generally requires the filing of a written grievance with 5 working days of the "incident." They further agree that Tempesta did not file a written grievance, but they disagree as to whether the grievance procedure applied to Tempesta because, as he alleges, he was never provided with a copy of the personnel policy. Moreover, the parties disagree as to whether Tempesta orally requested the opportunity to be heard on the decision not appoint him as CEO.

There is no evidence in the summary judgment record that the Town made written findings of fact or otherwise set forth in the record the basis for its decision not to appoint Tempesta to a new term of office as CEO.

## SUMMARY JUDGMENT STANDARD

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists

4

when there is sufficient evidence for a fact finder to choose between competing versions of the facts. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶11, 48 A.3d 774.

## DISCUSSION

### A. Count II – Denial of Procedural Due Process – 42 U.S.C. §1983

In Count II of his First Amended Complaint, Tempesta alleges that the Town's failure to appoint him as code enforcement officer for another term violated his due process rights to notice and a hearing with the opportunity to defend himself. In essence, Tempesta claims that he had a constitutionally protected property interest in continued employment with the Town as its CEO. The Town counters that Tempesta's employment as CEO was for a specific and definite term of office that expired, by its very terms, on March 15, 2016. Accordingly, the Town argues that Tempesta had no protected property interest in continued employment and, since he was not discharged or removed from office during his term, he received all the process to which he was due. Finally, the Town maintains that Tempesta failed to utilize the grievance procedure available to him pursuant to the Town's Personnel Policy and has, therefore, failed to exhaust his administrative remedies.

"To state a procedural due process claim under §1983, the plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law." *Clukey v. Town of Camden*, 717 F. 3d 52, 54-55 (1ª Cir. 2013). *See also Perry v. Sindermann*, 408 U.S. 593 (1972). "In Maine a property interest in continued employment may be established by contract, statute, or by proof of an objectively reasonable expectation of continued employment." *Krennerich v. Inhabitants of Town of Bristol*, 943 F.Supp. 1345, 1352 (D. Me., 1996). As a general proposition, however, "a benefit is

5

not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

The Maine Law Court has had several occasions to consider whether a government employee had a constitutionally protected property interest in continued employment. In *Barber v. Fairfield*, 460 A.2d 1001 (Me. 1983), the police chief was appointed by the town manager to a one-year contract until March 31, 1979. The police chief claimed that he had a justifiable expectation of being reappointed after March 31, 1979. The Law Court held that "[a] property interest may also be created if there are 'rules and mutually explicit understandings' to support a claim of entitlement." *Id* at 1007 *quoting Lovejoy v. Grant*, 434 A.2d 45, 50 (Me. 1981).

The Court observed that the absence of a tenure provision was not determinative because a "written contract may be supplemented by an agreement implied from the employer's 'policy and practices.'" *Id.* The Court in *Barber I* explained that the expectation of reappointment must be an "objective" one, "not a mere subjective expectancy." *Id.* at 1008. The Law Court remanded the case to the trial court for a factual determination of the "narrow" issue of whether the policy and practices of the town provided the plaintiff with a justifiable expectation of reappointment, which would be a protected property interest.

On remand, the trial court noted that the police chief was originally appointed "for the ensuing year." To put to rest the argument that the police chief had an indefinite appointment, the town manager appointed the chief for a specific term, i.e., until March 31, 1979. The court concluded that by virtue of that specific term of office, it was not objectively reasonable or justifiable to expect reappointment after that date. *See Barber v. Fairfield*, 1984 Me. Super. LEXIS 68 (Bradford, J.).

6

On appeal, the Law Court affirmed the trial court's conclusion that town officials had not created a property interest by providing the police chief with an objective expectation of reappointment. *Barber v. Fairfield*, 486 A.2d 150, 153 (Me. 1985).

In *Mercier v. Town of Fairfield*, 628 A.2d 1053 (Me. 1993), the plaintiff was appointed annually as town manager from 1984 through 1989, but was not appointed in 1990. The evidence at trial included the testimony of former town council members that it was the intention of the council at the time that the plaintiff's employment would be for an indefinite period. Moreover, there was evidence that the plaintiff was encouraged to purchase property and reside in the town and that he informally committed to remain as town manager until his children completed high school. The Law Court characterized the evidence as supporting an unwritten contract for an indefinite term. There was no evidence suggesting that the plaintiff's contract or term of office was intended to be for a fixed and definite period of time. The Law Court affirmed the jury's conclusion that the town's actions created a property interest in the plaintiff because he had an objectively reasonable expectation of continued employment. *Id.* at 1056.

There are some statutory provisions that should be considered. Title 38 M.R.S. §441 provides in pertinent part:

> In every municipality, the municipal officers shall annually by July 1st appoint or reappoint a code enforcement officer . . . . The municipal officers may remove a code enforcement officer for cause, after notice and hearing. This removal provision only applies to code enforcement officers who have completed a reasonable period of probation as established by the municipality . . . . If not reappointed by a municipality, a code enforcement officer may continue to serve until a successor has been appointed and sworn.

7

Title 30-A M.R.S. §2601-A provides in part:

> Municipal officers may appoint code enforcement officers trained and certified in accordance with section 4451 to serve for fixed terms of one year or more, and may remove those code enforcement officers only for cause after notice and hearing.

Finally, Tempesta points to and relies upon certain provisions of the Town's Personnel Policy. (*See Exhibit E to Plaintiff's Opposition to Summary Judgment*). In particular, Tempesta refers to Article IV, which describes the types of appointments applicable to the Town's employees. Article IV provides as follows:

> The following types of appointments may be made to the Town's service in conformity with the rules established:
>
> A. Full Time. A full time employee works full time (30 hours) and on a continuing basis (indefinite). He/she is subject to all personnel rules and regulations and receives all benefits and rights as provided by these rules.
>
> B. Regular Part-Time. An employee in this classification works less than the normal work week, but on a continuing basis. He/She [sic] is subject to all personnel rules and regulations. Vacation and holiday benefits shall be in proportion to the hours worked. This classification shall only be assigned at the discretion of the Board of Selectmen. Additional benefits may be granted by the Board of Selectmen.
>
> C. Temporary Employees. Temporary employees work on a non-permanent basis, usually within a limited time frame. They are not entitled to benefits such as holiday pay, accrual of vacation time, or seniority, and may be terminated for any reason at any time.

Tempesta acknowledges that he was not a "full time" employee. Further, he argues that since he was clearly not a "temporary employee," he must have been classified as a "regular part-time" employee who served "on a continuing basis," namely, on an "indefinite" basis. Thus, Tempesta maintains that according to the Town's own personnel policy he had a protected property interest in continued, i.e., indefinite employment/appointment as the Town's code enforcement officer, notwithstanding the fixed term of his appointment.

The Town counters by pointing out that Tempesta received no benefits at all and, therefore, he did not fit within the definition of "regular part-time" employee. Moreover, the Town contends that Tempesta was appointed for a fixed and definite term of office and had no objectively reasonable or justifiable expectation in a lifetime appointment as the Town's code enforcement officer. Stated otherwise, the Town argues that all Tempesta has shown is his mere personal and subjective belief that he would remain Benton's code enforcement officer for life or for as long as he wanted to be.

Based on the summary judgment record, the court concludes that there is no genuine issue of material fact that Tempesta had an objectively reasonable or justifiable expectation that he would be appointed and reappointed indefinitely as the code enforcement officer for the Town for as long as he wanted the job. At best, Tempesta assumed that he would be reappointed unless there was just cause to remove him, but that was a subjective assumption on his part and the Town did not do or say anything to him to create a constitutionally protected property interest in continued employment after his term of office expired. Based on this summary judgment record, the court finds that the Town of Benton is entitled to judgment as a matter of law on Count II of the First Amended Complaint.

Tempesta's reliance on Article IV (B) of the Town's Personnel Policy is misplaced. Tempesta seeks to be classified as a "Regular Part-Time" employee of the Town with employment "on a continuing basis." By being employed "on a continuing basis," Tempesta concludes that he must have an "indefinite" appointment, notwithstanding the explicit expiration dates in his certificates of appointment. Even if Tempesta is more like a "Regular Part-Time" employee than any other classification, however, the fact remains that such a classification may be assigned only in the discretion of the Board of Selectmen. In its discretion, the Town's Select Board appointed Tempesta to a fixed and definite term of office. Indeed, this appears to be required by 30-A M.R.S. §2601-A.

It is true that Tempesta was appointed a total of four times as Benton's code enforcement officer. Each of those appointments, however, was for a fixed and definite term of office and each certificate of appointment received by Tempesta explicitly stated that his term of office expired on a date certain.

This case is significantly different than *Mercier v. Town of Fairfield, supra*, where there was substantial evidence that the relationship and mutual understandings of the parties supported a conclusion that Mercier's employment was to be continuing and indefinite, unless he was removed for cause. Here, the only thing Tempesta can point to is the fact that he was reappointed three times without incident, that he had been told by a member of the Select Board that he was doing a good job with no concerns about his work performance, and that no one told him that he would not be reappointed. In the court's view, this falls well short of generating a genuine issue of material fact that Tempesta had an objectively reasonable and justifiable expectation that he would be reappointed indefinitely. Rather, the summary judgment record supports the conclusion that, by an objective standard,

10

Tempesta could not justifiably expect to be reappointed beyond March 15, 2016. Stated otherwise, whether Tempesta was reappointed to a new term of office after March 15, 2016 was a matter within the discretion of the Select Board of the Town of Benton. As such, Tempesta has failed to generate a genuine issue of material fact that the policies, practices and mutual understandings of the Town created a property interest in him of continuing employment after his term of office expired.[1] In light of the court's conclusion, it is not necessary to address the argument that Tempesta failed to exhaust his administrative remedies by not utilizing the Town's grievance procedure.

### B. Count V – Freedom of Access Act Violation – 1 M.R.S. §407

Title 1 M.R.S. §407(2) provides in its entirety as follows:

> Every agency shall make a written record of every decision involving the dismissal or the refusal to renew the contract of any public official, employee or appointee. The agency shall, except in the case of probationary employees, set forth in the record the reason or reasons for its decision and make findings of fact, in writing, sufficient to apprise the individual concerned and any interested member of the public of the basis for the decision. A written record or a copy thereof must be kept by the agency and made available to any interested member of the public who may wish to review it.

---

[1] Tempesta also relies upon a legal memorandum prepared by the Maine Municipal Association. *See Exhibit 6 to Plaintiff's Opposition to Summary Judgment.* In particular, he points to the fact that his certificates of appointment did not include "disclaimer" language similar to that suggested on page 7 of the MMA memorandum. The MMA memorandum is not factual evidence of anything in this case. Rather, it is a document prepared by MMA to provide guidance and assistance to municipalities. While the suggested disclaimer language may be helpful in avoiding litigation such as the present case, it is not a legal requirement and its absence does not create a genuine issue of material fact where one does not otherwise exist.

11

There is no dispute that the Town did not create a written record of its decision not to appoint Tempesta as its code enforcement officer for another term of office. Nor is there any dispute that the Town made no written findings of fact regarding its decision pertaining to Tempesta's reappointment. The Town contends that 1 M.R.S. §407(2) does not apply to this situation because: (1) Tempesta's term of office simply expired and someone else was appointed and, accordingly, (2) there was no "refusal to renew" his contract as contemplated by section 407(2). Tempesta, on the other hand, maintains that he is entitled to judgment as a matter of law as to Count V of his First Amended Complaint because 1 M.R.S. §407(2) plainly applies to his situation.

As far as the court can determine, there has not been a Law Court case that has addressed whether 1 M.R.S. §407(2) applies when a governmental appointee's fixed term of office has expired but who has not been reappointed to a new term. The literal language of section 407(2) is broad enough to encompass employees, officers and appointees whose terms of office are definite in some way, but who could be reappointed. *See, e.g.*, 5 M.R.S. §2 (with certain exceptions, all civil officers "shall hold their offices for 4 years and no longer, unless reappointed"); 5 M.R.S. §196 (attorneys in Attorney General's Office serve at pleasure of the Attorney General).

The cases from the Law Court that have considered the applicability of section 407(2) all involved the removal or dismissal of an employee for cause during their term of appointment, which is clearly covered by the statute. *See, e.g., Gorham v. Androscoggin County*, 2011 ME 63, 21 A.3d 15 (corrections officer); *Quintal v. City of Hallowell*, 2008 ME 155, 956 A.2d 88 (code enforcement officer); *Colby v. York County Comm'rs.*, 442 A.2d 544 (Me.

1982) (deputy sheriff). What is also clear from the *Colby* decision is that M.R.Civ.P. 80B (and presumably Rule 80C as well) may be used to compel the preparation of the written record required by 1 M.R.S. §407(2). *Id.* at 547-48.

In Count V of his First Amended Complaint, Tempesta is seeking to recover a civil forfeiture of $500 "[f]or the Town of Benton's willful violation of Maine's Freedom of Access Act." *See ¶ 70, First Amended Complaint.* It does not appear to the court that Tempesta is seeking to have the court issue an order directing the Town to make a written record, with findings of fact, in support of its decision not to reappoint him as its code enforcement officer, assuming 1 M.R.S. §407(2) applies in this factual situation. As noted earlier, Tempesta has dismissed Count I of his First Amended Complaint brought pursuant to Rule 80B.

Title 1 M.R.S. §410 provides:

> For every willful violation of this subchapter, the state government agency or local government entity whose officer or employee committed the violation shall be liable for a civil violation for which a forfeiture of not more than $500 may be adjudged.

A penalty for a civil violation under the Maine Freedom of Access Act is only enforceable by the Attorney General or some "other appropriate public official." 17-A M.R.S. §4-B(1). *See Lewiston Daily Sun v. School Admin. Dist. No. 43,* 1999 ME 143, ¶ 11, 738 A.2d 1239; *Scola v. Town of Sanford,* 1997 ME 119, ¶ 7, 695 A.2d 1194.

The Town is entitled to judgment as a matter of law on Count V of the First Amended Complaint

## CONCLUSION

13

The entry is:

The Defendant's Motion for Partial Summary Judgment is GRANTED. Judgment for the Defendant Town of Benton against the Plaintiff Albert Tempesta on Counts II and V of the First Amended Complaint.

The Clerk is directed to incorporate this Order by reference into the docket in accordance with M.R.Civ.P. 79(a).

Dated: July 30, 2019

William R. Stokes
Justice, Maine Superior Court

14