STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-17-153

BANGOR SAVINGS BANK,

     Plaintiff

v.

FUNDING METRICS, LLC d/b/a
LENDINI,

     Defendant

**ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT**

Before the court are cross motions for summary judgment filed by plaintiff Bangor Savings

Bank ("BSB") and defendant Funding Metrics, LLC d/b/a Lendini ("Lendini"). BSB is represented

by Attorney Erica M. Johanson. Lendini is represented by Attorney Gerald F. Petruccelli. Oral

argument was held on October 6, 2019. For the following reasons, both motions are denied.

**Facts**

In support of their motions, the parties have filed a joint stipulation of facts. Consequently,

the parties dispute involves only the inferences which can be drawn from the otherwise

uncontested facts which are as follows.[1]

TRT Electric, Inc. ("TRT") was a company that engaged in the provision of electrical

contracting services from 2011 to 2015. TRT's sole shareholder was Joshua Tibbets. Between

2011 and 2015, TRT was a customer of BSB and borrowed over $250,000 in commercial loans.

---

[1] At oral argument the Court inquired whether the parties' presentation of a stipulated record was intended to allow the Court to decide disputed inferences and thereby reach a final result. *See Blue Sky West, LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 16 n.10, 215 A.3d 812 (citing *Rose v. Parsons*, 2015 ME 73, ¶ 8, 118 A.3d 220). Following oral argument, both parties submitted briefs to the Court stating that it was not their intention to have the court enter judgment on a stipulated record but that it was instead their intention to allow the court to determine whether genuine issues of material fact remain to be decided in the case. Given this agreement, the Court treats the Parties' submissions as motions for summary judgment rather than motions for judgment on a stipulated record. *See id.*

1

The loan agreements required TRT to repay its loans in monthly installments. In exchange for the loans, BSB took and perfected a first-priority security interest in all of Tibbetts and TRT's then-existing and after-acquired business assets, including TRT's present and future accounts receivable. Pursuant to the Loan Agreements, TRT was required to obtain BSB's permission before disposing of or further encumbering BSB's collateral.

On May 20, 2015, TRT entered into a number of agreements with Lendini including an Agreement to Purchase and Sell Future Receivables and a Merchant Security Agreement. Pursuant to these agreements, Lendini wired TRT $98,875 which was deposited into TRT's BSB deposit account. In exchange for this money, TRT authorized Lendini to withdraw $140,000 out of the deposit account in daily increments of $1,060.61. Lendini commenced these withdrawals on June 1, 2015, which continued until August 5, 2015. Ultimately, the withdrawals ended when TRT withdrew Lendini's authorization to continue withdrawing funds. In total, Lendini withdrew $50,909.28 from TRT's deposit account. TRT did not inform BSB of its agreements with Lendini.

On July 20, 2017, BSB filed the instant complaint against defendant Lendini. The complaint alleges one count of conversion.

**Standard of Review**

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). "[S]ummary judgment is appropriate when the portions of the record referenced in the statements of material fact disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400.

## Discussion

In order to establish a claim for conversion, BSB must show (1) that it has a property interest in the property Lendini possess; and (2) that it had the right to possession at the time of the conversion.[1] *See Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. In this case, BSB's claim of conversion is based on its assertion that, due to its perfected security interest in TRT's accounts receivable, BSB has a superior right to the $50,909.28 which Lendini withdrew from TRT's Bangor Savings Bank deposit account between June 1, and August 5, 2015.

As a general matter, it is true that a secured party may maintain an action for conversion when (1) a debtor makes an unauthorized transfer of collateral; and (2) that unauthorized transfer constitutes a default under the terms of the security agreement which gives the secured party an immediate right to the collateral. *See e.g. Harley-Davidson Motor Co. v. Bank of New England-Old Colony, N.A.*, 897 F.2d 611, 617 (1st Cir. 1990) (collecting cases). As discussed above, the summary judgment record in this case shows that BSB possessed a perfected security interest in all of TRT's business assets, including the contents of TRT's deposit account as well as TRT's accounts receivable. As a condition of its financing agreements, BSB required TRT to obtain permission before disposing of or encumbering BSB's collateral. The security agreement also specified that TRT's failure to comply with or perform its obligations under the agreement would constitute a default. Because TRT failed to obtain BSB's permission prior to entering into its agreements with Lendini, the subsequent transfers of funds from TRT's deposit account constitute a default under the terms of BSB's agreement with TRT. Consequently, evidence exists which

---

[1] In many conversion cases, the party claiming that property has been converted is also required to show that they have made a demand for the return of the property. *See Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. This requirement, however, is only necessary in those situations where the holder took the property rightfully. *General Motors Acceptance Corp. v. Anacone*, 160 Me. 53, 83, 197 A.2d 506 (1964). In this case, BSB is arguing that Lendini wrongfully acquired the $50,909.28 from TRT.

3

could allow BSB to establish a prima facie case for conversion at trial. *See Withers*, 1998 ME 164, ¶ 7, 714 A.2d 798; *Harley-Davidson Motor Co.*, 897 F.2d at 617.

However, both parties agree that, because the property which was allegedly converted consists entirely of funds transferred to Lendini from TRT's deposit account, this dispute is governed by section 9-1332(2) of Maine's Uniform Commercial Code. This provision states that: "A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." 11 M.R.S. § 9-1332(2).

In consequence of this provision, BSB must therefore show that Lendini colluded with TRT in violating BSB's rights. If Lendini did not act in collusion, then BSB would not retain a security interest in the transferred funds and therefore would not retain any superior right to possession of the funds. Thus, in the absence of a showing of collusion between Lendini and TRT, BSB would not be able to prevail on its conversion claim.

Maine's Uniform Commercial Code does not define "collusion." The official comment to section 9-1332, however, states that "[t]o deal with the question of the 'bad actor,' this section borrows 'collusion' language" from U.C.C. section 8-115. 11 M.R.S.A. § 9-1332 U.C.C. cmt. 4. The commentary to Maine's enactment of section 8-115 states that "the collusion test is intended to adopt a standard akin to the tort rules that determine whether a person is liable as an aider or abettor for the tortious conduct of a third party." 11 M.R.S.A. § 8-1115 U.C.C. cmt. 5 (citing Restatement (Second) of Torts § 876).

Pursuant to the Restatement, a person is liable to a third party for the tortious conduct of another if the person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second)

4

of Torts § 876(b).[1] Thus, in order to have colluded with TRT, Lendini must have (1) been aware that TRT was committing a wrong against BSB and (2) have provided substantial assistance or encouragement to TRT toward the commission of that wrong. *Id*. The mere awareness that TRT was committing a wrong is not enough. 11 M.R.S.A. § 8-1115 U.C.C. cmt. 5; *see also* White, Summers, Hillman, *Uniform Commercial Code, Practitioner Treatise Series* § 33:39 at 504 (6th ed.) (stating that normally, knowledge that a payment violates a secured creditors security interest is not enough for collusion).

In this case, BSB argues that Lendini's conduct satisfies this standard of collusion because Lendini was both aware that BSB had a superior security interest and provided substantial assistance to TRT by entering into the contracts with Lendini. The court takes issue with this characterization of what constitutes collusion.

This is because the right which BSB asserts Lendini and TRT have violated is BSB's right to possession of the collateral stemming from the default caused by TRT's failure to obtain BSB's permission to dispose of or encumber the collateral. The right to possession of the collateral, however, did not arise solely from TRT's contractual relationship with Lendini but instead arose due to the fact that the relationship was created without BSB's permission. In other words, the wrong suffered by BSB is TRT's failure to obtain BSB's permission before disposing of and encumbering BSB's collateral. Thus, in order for Lendini to be found to have colluded with TRT, BSB must show that Lendini provided substantial assistance or encouragement to TRT to not only enter into the agreements, *but to enter into the agreements without obtaining BSB's permission.*

---

[1] In addition to subsection b, Restatement § 876 also provides that a person is liable to a third party for the tortious conduct of another if the person "orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue" or if the person "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876(a), (c).

5

The mere fact that Lendini executed the agreements with the knowledge that TRT was required to obtain BSB's permission but had not done so does not amount to substantial assistance. *See* 11 M.R.S.A. § 8-1115 U.C.C. cmt. 5 (stating "mere awareness that the customer may be acting wrongfully does not itself constitute collusion").

## Conclusion

After reviewing the evidence in the summary judgment record, the Court concludes that a fact-finder could draw competing inferences about whether Lendini either did or did not substantially assist or encourage TRT to refrain from obtaining BSB's permission prior to disposing of or encumbering BSB's collateral. Consequently, a genuine issue of material fact exists which requires the Court to deny both parties motions for summary judgment.

The entry is

Plaintiff Bangor Savings Bank Motion for Summary Judgment is DENIED

Defendant Funding Metrics LLC d/b/a LENDINI's Motion for Summary Judgment is DENIED.

Date: 12 11 19

_____
Justice, Superior Court

6