STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-42

MAINE MUNICIPAL ASSOCIATION
WORKERS' COMPENSATION FUND
and TOWN OF SIDNEY,
       Plaintiffs,

V.

RICHARD JANDREAU, JR., and
KIMBERLY JANDREAU[1],
       Defendants

**ORDER ON PENDING MOTIONS**

## INTRODUCTION

Before the court are cross motions for summary judgment in this action brought to enforce a workers' compensation lien pursuant to 39-A M.R.S. §107. The essential material facts are not in dispute and, as described below, are taken from the summary judgment record.

## FACTS

On February 11, 2017, Defendant Richard Jandreau, Jr. (Jandreau), while in the course and scope of his employment as Fire Chief for the Town of Sidney, was involved in a motor vehicle accident. In particular, while Jandreau was responding to an emergency call, another vehicle operated by Joseph Couture, negligently pulled out in front of Jandreau's vehicle, thereby causing a collision. As a result of Mr. Couture's negligence, Jandreau suffered significant injuries to his neck, back, chest, legs and arms, including pain and suffering.

---

[1] In the complaint originally filed in this action, Defendant Kimberly Jandreau was misidentified as "Tammy" Jandreau. The Plaintiffs' consented-to "Motion to Correct Named Party" was granted by the court on February 18, 2020.

The Town of Sidney provides workers' compensation coverage to its employees through the Maine Municipal Association Workers' Compensation Fund (MMAWCF). As a result of the motor vehicle accident of February 11, 2017, Mr. Jandreau began receiving workers' compensation payments through MMAWCF. As of December 30, 2019, MMAWCF had paid to Mr. Jandreau a total of $74,012.38 in benefits consisting of $54,931.69 in medical costs and $19,080.69 in indemnity benefits.

In a complaint dated July 9, 2018, Mr. Jandreau, through counsel, commenced suit against Mr. Couture in the Kennebec County Superior Court seeking damages for the personal injuries he sustained as a result of Couture's negligence in causing the collision of February 11, 2017. Couture, through his insurance carrier, initially denied liability and some discovery was initiated and conducted. The complaint filed against Couture did not name Mrs. Jandreau as a party and did not assert any claims on her behalf.

On January 21, 2019, Mr. and Mrs. Jandreau signed a "Release and Indemnification Agreement" with respect to Mr. Couture and his insurer, State Farm Auto Insurance Company, "for the sole consideration of Fifty Thousand Dollars ($50,000), apportioned $33,333.33 to Richard Jandreau and $16,666.67 to Kim Jandreau . . . ." The law firm representing Mr. Jandreau in his suit against Mr. Couture (Hardy, Wolf & Downing) initially claimed a 1/3 contingency fee of $16,666.67 and $1,635.41 in litigation costs. Counsel for Mr. Jandreau was aware of the statutory lien asserted by MMAWCF and the Town. Following the execution of the "Release and Indemnification Agreement" referred to above, Hardy, Wolf & Downing sent MMAWCF a check for $16,660 "as full and complete settlement of the lien . . . ." MMAWCF returned the check on March 4, 2019.

## PROCEDURAL BACKGROUND

On March 6, 2019, MMAWCF and the Town commenced this action against Mr. & Mrs. Jandreau asserting, in a single count, a violation of 39-A M.R.S. §107, which provides in pertinent part:

> When an injury or death for which compensation or medical benefits are payable under this Act is sustained under circumstances creating in some person other than the employer a legal liability to pay damages, the injured employee may, at the employee's option, either claim the compensation and benefits or obtain damages from or proceed at law against that other person to recover damages.
>
> If the injured employee elects to claim compensation and benefits under this Act, any employer having paid the compensation or benefits or having become liable for compensation or benefits under any compensation payment scheme has a lien for the value of compensation paid on any damages subsequently recovered against the 3rd person liable for the injury. . . .
>
> If the employee or the employee's beneficiary recovers damages from a 3rd person, the employee shall repay to the employer, out of the recovery against the 3rd person, the benefits paid by the employer under this Act, less the employer's proportionate share of cost of collection, including reasonable attorney's fees.

MMAWCF and the Town contend that they are entitled to the entire $50,000 received by the Jandreaus from Mr. Couture and State Farm, less their proportionate share of the cost of collection including reasonable attorney's fees. The Jandreaus, on the other hand, assert that the lien created by virtue of 39-A M.R.S. §107 does not have application until Mr. Jandreau has been made "whole" for his injuries, including damages for pain and suffering, which are not covered by workers' compensation benefits. The Jandreaus also maintain that Mrs. Jandreau's apportioned share of the settlement with Mr. Couture and State Farm, purportedly for loss of consortium, is outside the reach of the section 107 statutory lien to which MMAWCF and the Town are entitled. Finally, while the parties agree that 39-A

M.R.S. §107 explicitly provides that the employer (MMAWCF and the Town) are responsible for their proportionate share of the cost of collection, including reasonable attorney fees, they disagree on what that proportionate share should be.

On February 12, 2020, the Jandreuas moved for summary judgment on the following grounds: (1) as a matter of law, the 1/3rd contingency fee to which Hardy, Wolf & Downing were entitled under its contingency fee agreement with Mr. Jandreau, plus the costs of litigation, represents the proportionate share of collection costs under section 107 for which MMAWCF and the Town are responsible;[2] (2) as a matter of law, Mrs. Jandreau's share of $16,666.67 as "apportioned" in the Release and Indemnification Agreement is not subject to the section 107 lien, and; (3) as a matter of law, MMAWCF and the Town may only enforce its section 107 statutory lien to the extent Mr. Jandreau has been made "whole," including by the recovery of damages for pain and suffering, loss of enjoyment of life, permanent impairment and any other damages not covered by workers' compensation benefits.[3]

On February 14, 2020, MMAWCF and the Town moved for partial summary judgment on the following grounds: (1) as a matter of law, the section 107 lien "attaches to the full amount of [Mr. Jandreau's] settlement with the third-party tortfeasor responsible for his on-the-job accident,"[4] and; (2) as a matter of law, the amount of the settlement "apportioned" to Mrs. Jandreau, allegedly for loss of

---

[2] As the court understands it, Hardy, Wolf & Downing is seeking attorney fees of approximately $11,099.99, plus $1,635.41 in litigation costs for a total of $12,735.40. This is calculated by taking the $50,000 settlement and deducting Mrs. Jandreau's "apportioned" share of $16,666.67, leaving $33,333.33. Applying a one-third contingency fee to that amount equals $11,099.99. To that is added $1,635.41 in litigation costs for the total claimed of $12,735.40.

[3] On the issue of damages, Mr. Jandreau acknowledges that this may be a question of fact that is not suitable for resolution by way of summary judgment.

[4] MMAWCF and the Town acknowledge that section 107 lien must be reduced by their proportionate share of the cost of collection, including reasonable attorney fees. What that proportionate share is, remains a factual issue that cannot be decided by way of summary judgment.

consortium, is still subject to the section 107 workers' compensation lien based on the authority of *Nichols v. Cantara & Sons*, 659 A.2d 258 (Me. 1995).

The parties filed timely replies to the respective motions for summary judgment, with the final submission being received by the court on April 6, 2020. Oral argument has been waived.

## SUMMARY JUDGMENT STANDARD

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144 (Me. 1995). "A trial court properly grants summary judgment for the movant if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 14, 796 A.2d 683 (citing *Stanton v. University of Maine Sys.*, 2001 ME 96, ¶ 6, 773 A.2d 1045). A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact-finder to choose between competing versions of the facts. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.2d 774.

## DISCUSSION

The cross-motions for summary judgment have generated three issues for the court's consideration. First, whether the statutory lien created by 39-A M.R.S. §107 must be interpreted in light of and subject to the so-called "made whole doctrine." Second, whether Kim Jandreau's share of $16,666.67 "apportioned" to her in the Release and Indemnification Agreement is beyond the reach of the section 107 lien held by MMAWCF and the Town. Finally, what is the proportionate share of collection costs, including attorney's fees for which MMAWCF and the Town are responsible?

## A. Title 39-A M.R.S. §107 and the Made Whole Doctrine

The Jandreaus contend that Mr. Jandreau has suffered damages, including past and future pain and suffering and past and future loss of enjoyment of life, far in excess of what he has been paid in workers' compensation benefits.[5] They further maintain that of the $50,000 settlement they received from Mr. Couture and State Farm, the sum of $16,666.67 must be deducted as Mrs. Jandreau's "apportioned" share for loss of consortium, leaving the sum of $33,333.33. From that amount, $12,735.40 must be deducted as the proportionate share of the cost of collection, leaving a balance of $20,597.93. *See note 1, supra.* The Jandreaus argue that it is only this amount that is even arguably subject to the statutory lien created by 39-A M.R.S. §107. But even as to this amount, the Jandreaus assert that the section 107 lien does not apply to and cannot be enforced against any third-party settlement unless and until Mr. Jandreau's damages are "regained in full." In other words, Mr. Jandreau must be "made whole" before MMAWCF and the Town may enforce their lien against the third-party settlement, and since Mr. Jandreau's damages far exceed the $20,597.93 available from the settlement with Mr. Couture, the section 107 lien may not be enforced against that recovery.

The so-called "made whole doctrine" has been described by the Jandreaus as the majority approach in insurance law whereby an insurer's right of subrogation may only be enforced when the insured's entire loss has been paid. *See Plaintiffs' Motion for Summary Judgment at 14-15.* The Jandreaus acknowledge, however, that the "made whole doctrine" is not the majority view in the context of workers' compensation liens. *Id. at 15.* Nevertheless, they contend that the language of 39-

---

[5] The Jandreaus claim that they have sustained approximately $248,000 in damages, with Mr. Jandreau's damages alone exceeding $186,000.

A M.R.S. §107, as it pertains to the employer's lien, is ambiguous and should be interpreted to embody the "made whole doctrine." Stated otherwise, the Jandreaus argue: "As a matter of law, Section 107 does not apply to this Third-Party Settlement because Jandreau was never made whole – which is to say he never recovered his damages . . . ." *Id. at 20*.

In making this argument, the Jandreaus contend that the terms "recover" and recovery," as used in section 107, are susceptible to multiple interpretations, including that they mean; "to get back or regain in full." *Id. at 13*. From this premise they further suggest that the ambiguity in section 107 should be resolved in favor of the "made whole doctrine."

The Jandreaus' argument, however, finds no support in either the plain language of section 107 or in the Law Court decisions interpreting that language. The language of 39-A M.R.S. §107 is identical to its predecessor statute, 39 M.R.S. §68,[6] which was examined by the Law Court in *Liberty Mut. Ins. Co., v. Weeks*, 404 A.2d 1006 (Me. 1979) and *Perry v. Hartford Acci. & Indem. Co.*, 481 A/2d 133 (Me. 1984).

In *Weeks*, the Law Court traced the legislative history of the statutory lien created by 39 M.R.S. §68 and noted that it was intended to give the workers' compensation carrier or employer "total reimbursement of the proceeds of any recovery against the third party," and that purpose did not change when the Legislature introduced the concept of a lien into the statute. 404 A.2d at 1012.

Later, in *Perry*, the Law Court described the language of section 68 pertaining to the statutory lien as being "clear" and "plain" and held:

> We hold that an employer's lien under 39 M.R.S. §68 extends to the entire amount of an employee's recovery against a third party tortfeasor for bodily injury, including those portions allocable to pain and

---

[6] *See McKeeman v. Cianbro Corp.*, 2002 ME 144, ¶ 10, 804 A.2d 406, 409.

suffering and loss of wages not compensable under the Workers' Compensation Act." 481 A.2d at 137-38.

The Law Court found that its interpretation of the statutory lien provisions of 39 M.R.S. §68 (now 39-A M.R.S. §107) was "in accord with the prevailing interpretation of comparable provisions in workers' compensation statutes across the country." *Id. at 138.*

There are, of course, decisions from other jurisdictions that do not follow Maine's approach. But each case has been decided, as it must be, on the basis of the particular statutory provision in effect in that state. *See,e.g., DiCarlo v. Suffolk Construction Co., Inc.,* 273 Mass. 624, 632, 45 N.E.3d 571. Since *Weeks* and *Perry,* the Law Court has been consistent in its view that the lien provisions in sections 68 and 107 of the Workers' Compensation Act are unambiguous. *McKeeman v. Cianbro Corp.,* 2002 ME 144, ¶ 9 (". . . the plain language of section 107 indicates the employer's right of reimbursement of amounts paid . . . ."); *Wallace v. South Portland,* 592 A.2d 1076, 1077 (Me. 1991) (rejecting Appellate Division conclusion that section 68 lien provision was not applicable where employee's injury could not be fully compensated).

The Jandreaus' claim that the "made whole doctrine" applies to the employer's statutory lien created by 39-A M.R.S. § 107 is rejected. Unless otherwise limited (to be discussed below), the lien in favor of MMAWCF and the Town applies to the entire $50,000 settlement with Mr. Couture and State Farm

B. **Does the lien apply to Kim Jandreau's "apportioned" share in the Release and Indemnification Agreement?**

In *Dionne v. Libbey-Owens Ford Co.,* 621A.2d 414, 417-18 (Me. 1993), the Law Court, in connection with a loss of consortium claim, held "that damages recovered by the wife [or husband] are her [or his] property not subject to her

husband's [or his wife's] employer's section 68 [now section 107] lien." In *Nichols v. Cantara & Sons*, 659 A.2d 258 (Me. 1995), the Law Court addressed: (1) which party had the burden of proving a spouse's loss of consortium in the context of an employer's workers' compensation lien, and; (2) whether, and under what circumstances, the Workers' Compensation Commission had the authority to calculate the damages attributable to a loss of consortium claim, again in the context of an employer's statutory lien.

The Court held that the employee bore the burden of proof on the issue of what portion of recovered damages is allocable to a spouse's loss of consortium claim. Further, the Court held that the Commission should not allocate a portion of an employer's lien to a claimed loss of consortium "in the absence of an express allocation in a settlement agreement or a judicial determination of the amount of the consortium claim." 659 A.2d at 263.

Here, the parties agree on the general principles of law as outlined above. They disagree, however, on the application of those principle to the facts of this case.

The Jandreaus, for example, contend that the "Release and Indemnification Agreement" expressly allocated one-third or $16,666.67 to Kim as her damages for her separate claim for loss of consortium. Therefore, they argue, the express allocation contemplated and required by *Nichols* has been satisfied and Kim's consortium damages are outside the reach of the employer's section 107 lien.

MMAWCF and the Town counter that the allocation of a portion of the settlement amount in the Release and Indemnification Agreement is insufficient to satisfy *Nichols* because: (1) Kim was not a party to the complaint against Mr. Couture; (2) it is not clear from the Release and Indemnification Agreement that the allocation of damages to Kim was for a claim for loss of consortium, and; (3) the Release and Indemnification Agreement is not a Settlement Agreement as contemplated by *Nichols*.

After careful consideration, the court concludes that the Jandreaus have met their burden of proof as contemplated by *Nichols*. The *Nichols* case involved two separate employees who sought to have the Workers' Compensation Commission allocate a portion of settlement proceeds to the employee's spouse for loss of consortium. One employee produced no evidence, other than his own testimony, as to the basis for calculating an allocation for loss of consortium. The other employee produced a settlement agreement signed by both the employee and his spouse, but the agreement contained no express allocation for loss of consortium. Based on these factual contexts, the Law Court held that the Commission had no authority to make an allocation for loss of consortium, "in the absence of an express allocation in a settlement agreement or a judicial determination of the amount of the consortium claim . . . ." 659 A.2d at 263.

In examining the position advanced by MMAWCF and the Town, it does not appear to the court that they are challenging the reasonableness of the amount of the settlement allocated to Kim Jandreau. Rather, they maintain that the apportionment within the Release and Indemnification Agreement is simply inadequate under *Nichols* to shield that portion of the settlement from the statutory lien created by section 107.

The court is satisfied, as a matter of law, that the apportionment to Kim Jandreau of one-third ($16,666.67) of the $50,000 settlement with Mr. Couture and State Farm meets the requirement of *Nichols* that there be an express allocation in a settlement agreement of the amount set aside for loss of consortium. There was no requirement that Kim Jandreau be named as a party plaintiff in the suit against Mr. Couture in order for her to settle her separate loss of consortium claim. *See Steele v. Botticello*, 2011 ME 72, ¶ 17, 21 A.3d 1023. While the Release and Indemification Agreement does not explicitly state that the apportionment to Kim was for her loss of consortium claim, the court agrees with the Jandreaus that such a claim was the

only one Kim could have brought in connection with the motor vehicle accident of February 11, 2017 that caused significant injuries to her husband. Finally, the fact that the operative document here is a Release and Indemnification Agreement, not a "Settlement Agreement" is not, in the court's view, determinative. The Release and Indemnification Agreement, for all intents and purposes, settled the claims against Mr. Couture including any claim Kim Jandreau had as a result of the February 11, 2017 accident.

Accordingly, the court finds, as a matter of law, that MMAWCF and the Town are entitled to a lien on the settlement proceeds in the amount of $33,333.33. "less [their] proportionate share of cost of collection, including reasonable attorney's fees." 39-A M.R.S. §107.

## C. Determining the Proportionate Share of Collection Costs Under Section 107

The parties agree that the section 107 lien held by MMAWCF and the Town must be reduced by their proportionate share of the cost of collection, including reasonable attorney's fees. They disagree as to what that proportionate share is or should be. The leading case on this issue is *McKeeman v. Cianbro Corp.*, 2002 ME 144, ¶ 18, 804 A.2d 406 where the Court held that an employer's proportionate share under section 107 should be calculated by comparing the employer's full benefit from the settlement with the total value of the settlement. There are disputed issues of fact on this question that cannot be resolved by way of summary judgment.

## CONCLUSION

The entry is:

The Cross Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART. Summary Judgment is entered for the Plaintiffs on their statutory lien claim under 39-A M.R.S. §107 in the amount of $33,333.33, less their proportionate share of the cost of collection, including reasonable attorney's fees.

The Clerk shall schedule a hearing on the issue of the cost of collection and attorney's fees.

The clerk is directed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Date: May 27, 2020

William R. Stokes
Justice, Superior Court